ROCKLAND-ROCKPORT LIME COMPANY, Respondent, *v.* MARY C. LEARY, as Administratrix of the Estate of JAMES D. LEARY, Deceased, Respondent, and DANIEL J. LEARY et al., Appellants.

Equitable conversion — definition and application of doctrine of equitable conversion — definition and effect of term "legal representative" when used in deed or contract — lease of lands giving lessee option to purchase of lessor or his legal representatives — when actual tender of purchase price need not be made to legal representatives of such lessor.

1. The doctrine of equitable conversion rests on the presumed intention of the owner of the property and on the maxim that equity regards as done what ought to be done. The conversion usually becomes effective at the date of the instrument expressing the intention, if a deed or contract, and if a will, at the date of the testator's death. This is the rule when an absolute and not a contingent conversion is intended; but where no conversion is intended, unless a contingent event happens, conversion should not be presumed as of a date earlier than when the contingent event happens.

2. The words "legal representative" ordinarily mean the executor or administrator, and that meaning will be attributed to them in any instance unless there be facts existing which show that the words were not used in their ordinary sense, but to denote some other and different idea.

3. Where one party to a contract is able and willing to perform, and has made due effort to that end, no actual tender need be made if performance has been prevented by the other party, or the situation is such that the amount to be tendered cannot be known without a judgment of the court, or some of the persons entitled to the money are infants, so that no tender can be made to them.

4. The owner of lands gave an option thereon to plaintiff, in which it was provided that the covenants therein should be binding on the parties and "their heirs, legal representatives, successors or assigns." The plaintiff, if it exercised such option, was required within a specified period to notify the owner "or his legal representative" of its intent so to do. Such notice was sought to be given to the administratrix of the owner. She had actual knowledge of plaintiff's intent to exercise the option, but sought to evade service of the notice, which was in fact given to one of the heirs who acted for all the others, such heir refusing to carry out the option. *Held*, that plaintiff had complied with the requirement of the option as to notice of its intent to purchase.

*Rockland-Rockport Lime Co.* v. *Leary*, 139 App. Div. 939, affirmed.

(Argued November 27, 1911; decided December 12, 1911.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered August 15, 1910, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought to compel the specific performance of an alleged contract to convey land, and the following facts were found in substance by the justice who presided at the Special Term before which it was tried: On the 17th of January, 1901, the plaintiff and one James D. Leary entered into an agreement in writing and under seal whereby the latter leased to the former certain lands and riparian rights on Newtown creek in the county of Kings for the term of ten years at an annual rental of $5,000. In addition to the covenants usually made in a lease of importance there was the following: "The party of the first part, (the lessor) in consideration of this lease,

hereby gives and grants unto the said party of the second part, (the lessee) the right and option to purchase the property herein demised, for the sum of $125,000 in gold coin of the United States, or its equivalent, at any time during the five years subsequent to February 1st, 1901, provided, however, and it is mutually understood and agreed, that the said party of the first part may withdraw said option and right hereby granted at any time after sixty days after he shall have given written notice to the party of the second part of his intention so to do. If the said party of the second part shall exercise said option and shall notify the said party of the first part, or his legal representative, of its intent so to do, then within thirty days thereafter, the party of the second part shall tender or cause to be tendered to the party of the first part, or his legal representative, $125,000, in the gold coin of the United States of America, or its equivalent. And the party of the first part, or his legal representatives, shall at the same time deliver or cause to be delivered to the party of the second part, a good and sufficient Warranty Deed of the premises herein described to the sole use and benefit of the said party of the second part, and its successors, forever. * * * And it is further understood and agreed, that the covenants and agreements contained in the within Lease are binding on the parties hereto, and their heirs, legal representatives, successors or assigns."

The plaintiff entered into possession of the premises and was still in possession when this action was commenced on the 21st day of May, 1906. James D. Leary died intestate in April, 1902, leaving him surviving a widow, three adult children and two infant grandchildren, each under the age of fourteen, the children of a deceased son, all of whom are parties defendant to this action. The widow, Mary C. Leary, was soon appointed sole administratrix of his estate and she is still acting in that capacity. She was made a party defendant, both as an individual and as administratrix. Since the death of the

lessor all the rent has been paid to Daniel J. Leary, one of his sons, who acted as attorney for the administratrix and as such gave receipts for all payments made. He " was the person in charge of the business connected with the land named in the indenture and the receiver of the rent derived therefrom for those interested." No effort was at any time made to withdraw the option contained in the lease:

The court found specifically that "within five years subsequent to the first day of February, 1901, the Rockland-Rockport Lime Company notified the said Daniel J. Leary of the intention of the Rockland-Rockport Lime Company to exercise the option named in said indenture, and requested him to carry out the same, which he, the said Daniel J. Leary, refused to do." This finding was not excepted to by any of the defendants.

On the 25th of January, 1906, the plaintiff caused to be delivered to the butler at No. 3 East 56th street, New York city, the residence of Mary C. Leary, a formal notice of its intention to exercise the option, and also a letter asking Mrs. Leary as the legal representative of her deceased husband to appoint an early day to close the matter up. Each of these papers was inclosed in a sealed wrapper addressed to Mary C. Leary, and when they were received by the butler he stated that she was in. He then went upstairs with the two papers, and after several minutes returned saying that Mrs. Leary was not in, and requesting the person who had delivered the papers to him to take them away. This request was declined, and the butler was instructed to give the papers to Mrs. Leary when she came in.

On the 29th of January, 1906, the plaintiff duly mailed to Mrs. Leary at her said residence a letter stating that it had served her with a notice of its intention to exercise the option, and adding that it was "the desire of the company to make the payment of the $125,000, as required by the lease, and receive the deed of the property, as in

the lease provided, at the earliest practical day and pref-
erably before the first day of February next." The letter
asked her to name a time and place where the duly author-
ized representative of the plaintiff could meet her to make
a tender of the money and receive the deed. This letter
was returned to the sender unopened. On the 31st of
January, 1906, two representatives of the plaintiff called
at the said residence of Mrs. Leary with $125,000 in gold
certificates of the United States, for the purpose of ten-
dering the same to her as administratrix as the purchase
money under the lease. Upon inquiry of the butler if
she was at home, he said she was not, and, when asked
if she would return soon, replied that she was out of the
city and would be gone a week or ten days. He was told
to tell her "that George F. Harriman, attorney for the
Rockland-Rockport Lime Company, called with Orrin F.
Perry, the manager of the Rockland-Rockport Lime
Company."

The court further found that "from the testimony and
evidence in this cause, and considering in connection there-
with the failure of Mary C. Leary to take the stand as a
witness in behalf of the defendants and to testify as to
the material facts necessarily within her knowledge, and
considering the failure to give any explanation of her
absence from the trial or of inability to attend, it is fairly
inferred that Mary C. Leary had actual knowledge, prior
to February 1st, 1906, of the intention and determination
of plaintiff to exercise the said option of purchase. It is
fairly inferred from the evidence herein that Mary C.
Leary sought to avoid and evade service of the notice of
intent to exercise the option and the making of tender."

The court found as conclusions of law that the plaintiff
had made sufficient efforts to comply with the provisions
of the lease relating to the exercise of the option of pur-
chase therein contained and also the provision requiring
the tender of $125,000 to the legal representative of the
lessor; that on the 31st day of January, 1906, the plaintiff

was entitled to a good and sufficient deed of the land described in the lease, but, as said land was subject to an outstanding right of dower of Mary C. Leary, the widow, an interlocutory judgment was directed in favor of the plaintiff and a referee was appointed to compute the gross cash value of said dower right and report the amount of purchase money remaining due after deducting the same from the purchase price. The complaint was dismissed as to Mary C. Leary individually.

An interlocutory judgment was entered accordingly and in due time the referee reported that the gross cash value of said dower right on the 31st of January, 1906, was the sum of $15,631. Thereupon final judgment was entered directing conveyance to the plaintiff upon the payment of the balance amounting to $109,369.

All the defendants except Mary C. Leary, as administratrix, appealed to the Appellate Division where the judgment was affirmed. The same defendants only now appeal to this court.

*Pierre M.  Brown* for appellants. Conversion in the case of an option occurs on the date of declaring, and does not relate back to the grant. (*Matter of Isaacs,* L. R. [3 Ch. 1899] 507; *Edwards* v. *West,* L. R. [7 Ch. Div.] 858; *Smith* v. *Lowenstein,* 50 Ohio St. 346; *Gilbert* v. *Port,* 28 Ohio St. 276; *Savage* v. *Burnham,* 17 N. Y. 561; *Clift* v. *Moses,* 116 N. Y. 144; *White* v. *Howard,* 46 N. Y. 144; *Chamberlain* v. *Taylor,* 105 N. Y. 185; *Graham* v. *De Witt,* 3 Bradf. 186; *Ogsbury* v. *Ogsbury,* 115 N. Y. 290; *Underwood* v. *Curtis,* 127 N. Y. 523.) Where the consideration should go after the transaction is closed is not controlling in fixing the identity of the person entitled to notice. (*Gall* v. *Vermuden,* 2 Freem. 199; *Taylor* v. *Sutton,* 15 Ga. 103; *Underhill* v. *Saratoga,* 20 Barb. 455; *Wilson* v. *Wilson,* 38 Me. 18; *Proprietors* v. *Grant,* 3 Gray, 142; *Ewing* v. *Jones,* 130 Ind. 251; *M. L. Ins. Co.* v. *Armstrong,* 117 U. S. 591; Redf. on

Surr. Prac. § 528; *Blakeman* v. *Sears*, 74 Conn. 516; *Johnson* v. *Ames*, 28 Mass. 172; *Greenwood* v. *Holbrooke*, 11 N. Y. 467; *Baines* v. *Ottey*, 1 M. & K. 465.) The determination of what the parties meant by the use of the words "legal representatives" is controlling. (Pom. on Cont. 387; *Kerr* v. *Purdy*, 51 N. Y. 629; *Babcock* v. *Emerich*, 54 How. Pr. 435; *Fallerton* v. *McLaughlin*, 70 Hun, 568; *Bostwick* v. *Frankfield*, 74 N. Y. 207; *Blanchard* v. *Archer*, 93 App. Div. 459; Story's Eq. Juris. 776.) Where there has been no fraud or concealment, and the vendee took the contract knowing that the vendor had a wife, and the latter refuses to take a gross sum, the court will not decree specific performance, especially of an option contract. (*Halsey* v. *Grant*, 13 Ves. Jr. 73; *Sternberger* v. *McGovern*, 56 N. Y. 12; *Castle* v. *Wilkinson*, L. R. [5 Ch. App.] 534; *Rudd* v. *Lescelles*, L. R. [1 Ch. Div. 1900] 815; *Balmanno* v. *Lumley*, 1 Ves. & B. 224; Fry on Spec. Perf. 1281; *Nelson* v. *Brown*, 66 Hun, 311; 144 N. Y. 389; *Fern* v. *Osterhaut*, 11 App. Div. 319; *Lowry* v. *Smith*, 9 Hun, 514; *Matter of Sipperly*, 44 Barb. 370; *Lawrenson* v. *Butler*, 1 S. & L. 18.) The acts done by plaintiff did not amount to the service of a notice or the making of a tender as a matter of law. (*Hoag* v. *Parr*, 13 Hun, 95.)

*George F. Harriman* and *Robert H. Ewell* for plaintiff, respondent. As to notice and tender, the plaintiff has done all that was necessary to entitle it to a specific performance of the contract. It is immaterial whether the administratrix or the heirs were the "legal representative" to receive notice and tender. (*Tompkins* v. *Hyatt*, 28 N. Y. 347; *Geisler* v. *Acosta*, 9 N. Y. 227; *Scholey* v. *Halsey*, 72 N. Y. 578; *Lawrence* v. *Miller*, 86 N. Y. 131; *Hayner* v. *A. P. L. Ins. Co.*, 69 N. Y. 435; *Kerr* v. *Purdy*, 50 Barb. 24; 4 Pom. Eq. Juris. [3d ed.] § 1407; *Crary* v. *Smith*, 2 N. Y. 60; *Reehil* v. *Frass*, 129 App. Div. 563; *Sugarman* v. *Brengel*, 68 App. Div. 377;

*Bleecker* v. *Johnston*, 69 N. Y. 309; *Schwier* v. *N. Y. C. & H. R. R. R. Co.*, 90 N. Y. 558.) The primary and ordinary meaning of the words " legal representative " is executors or administrators, they being the official representatives constituted by the proper court, and in the absence of proof requiring .a different meaning to be given to these words, they must be thus construed. (*Geoffroy* v. *Gilbert*, 5 App. Div. 98; 154 N. Y. 741; *Sulz* v. *M. R. F. L. Association*, 145 N. Y. 563; *Griswold* v. *Sawyer*, 125 N. Y. 411; *Thompson* v. *United States*, 20 Ct. Cl. [U. S.] 276; *Briggs* v. *Walker*, 171 U. S. 466; *Pillow* v. *Hardeman*, 3 Humph. [Tenn.] 538; *Robinson* v. *Hurst*, 78 Md. 59; *Weaver* v. *Roth*, 105 Penn. St. 408; *Cox* v. *Curwen*, 118 Mass. 198; *Johnson* v. *Edmond*, 65 Conn. 492; *Wason* v. *Colburn*, 99 Mass. 342; 18 Am. & Eng. Ency. of Law [2d ed.], 813.) Under the principle of equitable conversion, the purchase money belonged to the testatrix of the lessor, not to his heirs. It follows that the words " legal representative," as used in the lease to designate the person to whom tender should be made, referred to the executor or administrator of the lessor. (*Potter* v. *Ellice*, 48 N. Y. 321; *McCarthy* v. *Myers*, 5 Hun, 85; *Moore* v. *Burrows*, 34 Barb. 173; *Lawes* v. *Bennett*, 1 Cox Ch. 167; *Matter of Isaacs*, L. R. [3 Ch. 1894] 506; *Kerr* v. *Day*, 14 Penn. St. 112; *McKay* v. *Carrington*, 1 McLean, 50; *Keep* v. *Miller*, 42 N. J. Eq. 100; *Newport Water Works* v. *Sisson*, 18 R. I. 411; *Williams* v. *Lilley*, 67 Conn. 50; Tiffany on Modern Law of Real Prop. 266, § 11; Pom. Eq. Juris. [3d ed.], § 1163; 1 Sugden on Vendors [8th Am. ed.], 188; Lewin on Trusts [8th ed.], 952; Waterman on Spec. Perf. § 200, and note.) Plaintiff is entitled to an abatement from the contract price equal to the cash value of the outstanding right of dower. (*Thompson* v. *Simpson*, 128 N. Y. 270; *Bostwick* v. *Beach*, 103 N. Y. 421; *Maas* v. *Morgenthaler*, 136 App. Div. 359; *Waters* v. *Travis*, 9 Johns. 450; *Harsha* v. *Reid*, 45 N. Y. 415.) The

agreement in question was valid and enforceable, and both parties to it were capable in law of entering into such an agreement. (*Johnson* v. *Trippe*, 33 Fed. Rep. 530; Pomeroy on Spec. Perf. § 169; Waterman on Spec. Perf. § 200.)

Vann, J.  Upon the death of the lessor, intestate, the real estate in question descended to his heirs at law subject to the dower right of the widow, who did not sign the lease, and subject also to the lease itself and the provision for an option contained therein.  As the agreement by its terms bound " the heirs, legal representatives, successors or assigns " of the parties, the death of the lessor did not affect the right of the plaintiff to exercise the option.  The contract for an option ran with the land and was still in force when the efforts to exercise it were made, and the question presented for decision is whether those efforts were sufficient to satisfy the requirements of the instrument in that respect.  The appellants claim that the notice of intention should have been served upon the heirs at law.  The respondents claim that notice to the administratrix and the attempt to make a tender to her as the legal representative of the deceased lessor were sufficient to call for a conveyance, and, if not, that notice to Daniel J. Leary, the heir who acted for all the others and his refusal to carry out the option, entitled the plaintiff to the relief sought.

The action was twice tried, and on the first trial the complaint was dismissed upon the ground that notice should have been given and tender made to the heirs of the lessor, mainly for the reason that they had become the owners of the property and were to make the conveyance.  Upon appeal to the Appellate Division that judgment was reversed, and it was held that notice and tender to the administratrix and not to the heirs was required, because the option when exercised worked an equitable conversion of the realty into personalty

which related back to the date of the lease.    (133 App. Div. 379.)

The main reliance for this conclusion is *Lawes* v. *Bennet* (1 Cox Ch. 167), decided in 1785 by Lord Kenyon when master of the rolls.    In that case a lease was made for a long term with an option to the lessee to purchase the demised premises within a limited period for the sum of three thousand pounds.    The lessor died, and by his will, made several years before the lease, he devised all his real estate to his cousin, John Bennett, and all his personal property in equal parts to the said John and to Mary,    his    sister,    who were    appointed    " joint    executors."    In due time the option was exercised.    Bennett conveyed and the purchase price was paid to him.    A bill was filed by Mary to compel him to account to her for one-half of the three thousand pounds, and, as the reporter states, the single question was "whether the premises being part of the testator's real estate at the time of his death, but sold afterwards under the circumstances aforesaid, the purchase money should be considered as part of the real or personal estate of the testator." It was argued on the one hand that there was no declared intention of the testator to convert the realty into personalty; but it was left to the lessee, a stranger, to work the conversion, with the result that a simple contract creditor might wait many years before he knew whether there were any assets or not.    It was contended, on the other hand, that the absolute owner of property may give to a stranger any power over it that he thinks fit and that the testator had ample time before his death to alter his will if he had been so inclined.    In a very brief opinion and without much argument, the master of the rolls held that " When the party who has the power of making the election has elected, the whole is to be referred back to the original agreement, and the only difference is, that the real estate is converted into personal at a future period."    Accordingly he declared the

three thousand pounds to be part of the personal estate of the testator and required Bennett to account for a moiety thereof.

This case has been uniformly, although at times reluctantly, followed in England, and occasionally, but not universally, in the United States, not, however, without serious criticism in both countries. (*Townley* v. *Bedwell*, 14 Ves. 590; *Collingwood* v. *Rew*, 3 Jur. [N. S.] 785; *Smith* v. *Loewenstein*, 50 Ohio St. 346.) The principle has never been extended, even in England, but has been limited whenever limitation was possible without overruling Lord KENYON. (*Emuss* v. *Smith*, 2 De G. & Sm. 722; *Edwards* v. *West*, L. R. [7 Ch. Div.] 858.) It has been regarded as "difficult of explanation" and as creating "a very singular and inconvenient state of things." The main reason for following it, as an eminent English judge once intimated, is because it was "decided by so great a man as Lord KENYON."

The Supreme Court of Ohio, in an important case, refused to follow *Lawes* v. *Bennett* upon the ground that it does not rest upon a firm foundation. That learned court said: "The doctrine now most in accord with the general course of authority and principle is, that as between lessor and lessee, with the privilege to the latter to purchase, the conversion will be deemed to have taken place at the time of declaring the option and not from the date of the contract giving the option.   *   *   *   We see no good reason why the doctrine of relation back to the date of the lease should be applied for the purpose of divesting the heirs who held the freehold title when the option was declared, and handing over the purchase money to the personal representatives. The descent to the heir was in the legal channel which the statute had marked out; and after executing the lease, the lessor did nothing to curtail the rights of the heir, upon whom the law would cast the real estate immediately upon the death of the ancestor. The estate having thus devolved, and the

lessee having failed or neglected to exercise the option to purchase while the lessor was alive, we do not discover upon what satisfactory ground, the real estate should be deemed converted into personalty as of the date of the lease, for the purpose of diverting the purchase money from the heir to the administrator. * * * An examination of authorities, English and American, makes manifest that the doctrine of *Lawes* v. *Bennett* does not rest upon a firm foundation." (*Smith, Administrator,* v. *Loewenstein,* 50 Ohio St. 346.) To the same effect is *Gilbert* v. *Port* (28 Ohio St. 276).

The doctrine of equitable conversion rests on the presumed intention of the owner of the property and on the maxim that equity regards as done what ought to be done. The conversion usually becomes effective at the date of the instrument expressing the intention, if a deed or contract, and if a will, at the date of the testator's death. This is the rule when an absolute and not a contingent conversion is intended. In the case before us no conversion was intended unless the option was exercised, and the conversion was contingent for it depended wholly upon a future event which might or might not happen. If it happened, there was a conversion, otherwise there was none and, hence, the date when the contingency was resolved becomes important. The lessor had the power to thus provide and in so providing, what was his intention as presumed from what he wrote, there being no other guide except the surrounding circumstances so far as they bear on his intention? As he intended no conversion unless the contingent event happened, he is presumed to have intended none until that event happened, for that would be the natural date to have it take effect in order to avoid confusion if not disaster. Upon this theory the heirs would take the land and enjoy it as land, just as the heirs in this case have done, until the contingency became a certainty by the exercise of the option when they would take the purchase money instead of

the land, precisely as their ancestor would have had he survived until that time. The maxim underlying the doctrine of equitable conversion rests on a duty to do something, but in this case until the option was exercised there was no duty and it could not be known whether there ever would be a duty. Hence, conversion should not be presumed as of a date earlier than the date when the duty became certain, as that would be unreasonable and the same in effect as if the duty had existed from the outset. If the lessor had made the duty absolute instead of contingent, he could fairly be said to have intended that conversion *must* take place at some time, but as he made it contingent he could not have intended that result. In this respect the case is the same in principle as if a discretionary power of sale had been given in a will, when no conversion is effected in the absence of an actual sale, as "It must be made the duty of and obligatory upon the trustees to sell in any event" in order to work that result. (*White* v. *Howard*, 46 N. Y. 144, 162; *Chamberlain* v. *Taylor*, 105 N. Y. 185, 194; *Underwood* v. *Curtis*, 127 N. Y. 523, 533.) Hence the lessor must in reason be presumed to have intended that the discharge of the duty should take effect for all purposes only from the date when by his direction the duty became absolute through the occurrence of an uncertain event. To hold otherwise would carry a rule, unknown to the common law and created by courts of equity because founded on reason, far beyond the bounds of reason. As intention is involved, or presumed intention which must be reasonable, the manifest inconvenience of holding otherwise cannot be ignored. In the case of a lease for a long term, such as a period of twenty-one years with the privilege of renewal for twenty-one years longer, which is not unusual, with an option to purchase, which though unusual is sometimes given, it might not be known for more than a generation whether the leased property was real or personal and not until a

31

stranger had elected to exercise the option, or the period allowed had expired. Creditors, heirs, devisees, next of kin, legatees and even the state in assessing the transfer tax, might be involved in such uncertainty and confusion as could be dispelled only after years of litigation. This would necessarily reduce the market value of the property, simply through the action of the courts in blindly following a great common-law judge, who applied a reasonable rule of equity in an unreasonable way. The courts of this state have not adopted Lord KENYON'S application and we decline to adopt it. We hold that conversion was effected only from the date when conveyance became a duty and that it did not relate back to the date of the lease.

This conclusion, however, does not settle the question whether service of notice upon the administratrix was sufficient in view of the express requirement of the lease that in case the lessee should exercise the option it should notify the lessor, but not necessarily in writing, "or his *legal representative* of its intent to do so." The words "legal representative" ordinarily mean the executor or administrator, although sometimes when required by the context and surrounding circumstances they are held to mean next of kin, but only under rare and peculiar facts, heirs at law. (*Sulz* v. *Mutual Reserve Fund Life Assoc.*, 145 N. Y. 563.) The words in question are presumed to mean executors or administrators, and, as Judge PECKHAM said in the case last cited, "that meaning will be attributed to them in any instance unless there be facts existing which show that the words were not used in their ordinary sense, but to denote some other and different idea." (p. 574.)

The appellants insist that the heirs were referred to because they only could execute the good and sufficient deed called for. The legal representative was not required to execute the deed but to deliver it or cause it to be delivered. The covenant in express terms bound

the heirs, and they could not take the land, hold it and accept the rent until the option was exercised without complying with the covenant either voluntarily or through compulsion of the courts. The Revised Statutes provided that the Court of Chancery should have power to compel specific performance by any infant or other person "of any bargain, contract or agreement, made by any party who may die before the performance thereof, on petition of the executors or administrators of the estate of the deceased   *   *   *." (L. 1814, ch. 108, § 3; 2 R. S. *194, §§ 169, 175.) That power now resides in the Supreme Court. (Code Civ. Pro. § 4.) The lessor could do what he wished with his own property, and, hence, he could require notice to be given to any one he chose, even a trust company or any other stranger. If he intended that the lessor should notify his executor or administrator, he naturally expected the person would be a member of his family with whom all the other members would co-operate. If he meant his heirs, why did he not say so expressly? The lease is a long instrument, drawn with skill and is clear in every respect unless when "legal representative" was written, "heirs" were meant by implication only. I am personally of the opinion that the context does not overcome the presumption that those words were used with their ordinary meaning. I also think, as the learned trial judge found, that the efforts to notify the administratrix gave her "actual knowledge" of the fact and were sufficient to meet the requirements of the lease.

If, however, the lessor meant that notice should be given to his heirs instead of to his administratrix, still the requirement was met by notice to one of the adult heirs, the oldest and the managing heir as he may be called, and his refusal to act, which was tantamount to a refusal to convey. No " good and sufficient deed " could be given unless all the heirs united therein, and, hence, the refusal by one was the same as a refusal by all. (*Blood* v.

*Goodrich,* 9 Wend. 68.)   After such refusal there was no necessity of making a tender, for the law does not require a vain thing to be done.   Moreover, strict tender was unnecessary on account of the outstanding right of dower and because two of the heirs were infants. Where, according to allegation and evidence one party is able and willing to perform and has made due effort to that end, no actual tender need be made if performance has been prevented by the other party, or the situation is such that the amount to be tendered cannot be known without a judgment of the court, or some of the persons entitled to the money are infants, so that no tender can be made to them.   (*Lawrence* v. *Miller,* 86 N. Y. 131, and cases cited on page 137.)

We find no error in the record and the judgment appealed from should, therefore, be affirmed, with costs.

CULLEN, Ch. J., GRAY, HAIGHT, HISCOCK, CHASE and COLLIN, JJ., concur.

Judgment affirmed.