In the Matter of the Estate of FREDERICK KOPPER, JR., Deceased.

Surrogate's Court, New York County, June 21, 1929.

*Davis, Polk, Wardwell, Gardiner & Reed,* for the petitioner, Guaranty Trust Company.

*Charles A. Curtin,* for the State Tax Commission.

*Webb, Patterson & Hadley,* for the executors of E. Caroline Capen, deceased.

*Henry Schackno,* special guardian for Louise Kopper.

*Charles H. Strong,* special guardian for Sarah R. Clarke.

FOLEY, S. This is an accounting by the administrator of the estate of Frederick Kopper, Jr., who died intestate on the 5th day of April, 1927.

On June 17, 1926, the decedent entered into a contract in writing with Jenkins Estates, Inc., to sell to it his undivided one-fifth

interest in certain real estate in New York county. The other four-fifths were owned by his four sisters, one of whom, Sarah R. Clarke, was an incompetent. Louise Kopper, the wife of the decedent, did not join in the contract, and never released her dower in the premises.

The contract contained the following clause: "It is further understood and agreed between the parties that this contract is contingent upon the New York Supreme Court approving a sale by the Guaranty Trust Company of New York as the committee of Sarah R. Clarke, an incompetent person, of an undivided one-fifth interest which said Sarah R. Clarke has in the premises hereinabove described, and in the event that said New York Supreme Court does not approve of the transfer of the undivided one-fifth interest of said Sarah R. Clarke in said premises to Jenkins Estates, Inc., in exchange for stock and/or bonds, then this contract shall be null and void and of no effect."

The closing was set for October 15, 1926, but nothing was done pending the disposition of the proceedings in the Supreme Court for the sale of Mrs. Clarke's share of the realty. No extension agreement was signed, and matters remained as they were for some time after the date of decedent's death.

The contingency specified in the contract above quoted, therefore, had not occurred at the time of the death of this decedent as the Supreme Court did not approve the sale of Sarah R. Clarke's undivided interest until June, 1927. Subsequent to the death of the intestate, his widow, Louise Kopper, was adjudged to be an incompetent person, and the Guaranty Trust Company of New York was appointed her committee on June 22, 1927. On the 15th day of September, 1927, the Supreme Court authorized the committee of Louise Kopper to sell her *consummate* dower interest in the real estate the intestate had agreed to sell, and in pursuance of this order the Guaranty Trust Company conveyed to Jenkins Estates, Inc., the dower interest of Louise Kopper for the sum of $33,612.81. On the 27th day of December, 1927, in a proceeding in this court, the Guaranty Trust Company, as administrator of Frederick Kopper, Jr., was authorized to make and deliver a deed of the real property under the contract executed by the intestate for the amount agreed on, less the amount of the widow's dower.

A dispute has arisen between the representative of decedent's widow on one side, and on the other his heirs at law, regarding the proper distribution of the amount received by this administrator. The solution of the controversy depends on whether intestate's interest in the real property contracted to be sold by him upon

the conditions set forth in the contract, is to be regarded, at the time of his death, as realty or as personalty. I hold that the fund in the hands of the accounting administrator must be distributed as realty. Under the provisions of section 202 of the Surrogate's Court Act moneys unpaid at the time of death on a contract for the sale of lands are deemed to be personal property. But this rule is subject to the terms of the contract itself and it is within the power of the person contracting to overcome the statutory inference of an equitable conversion. The contract either expressly or by implication may continue the nature of the property as realty. (*Rockland-Rockport Lime Co.* v. *Leary*, 203 N. Y. 469.) There was no equitable conversion of the real estate upon the signing of the contract. The language of that instrument precludes a finding that the parties, and particularly the decedent, intended a conversion at that time. The contract was conditional. Its purpose was to transfer the property in question, owned in common by the intestate and his sisters, to a corporation previously organized by the family to hold the parcels involved here, with parcels previously conveyed to it. Under its terms it was not binding unless the Supreme Court acted favorably on an application to sell Mrs. Clarke's undivided interest. The parties consequently did not intend to convert the property at the time of signing the contract. The conversion was intended to take place only when that contingency occurred. " The doctrine of equitable conversion rests on the presumed intention of the owner of the property and on the maxim that equity regards as done what ought to be done. The conversion usually becomes effective at the date of the instrument expressing the intention, if a deed or contract, and if a will, at the date of the testator's death. This is the rule when an absolute and not a contingent conversion is intended. In the case before us no conversion was intended unless the option was exercised, and the conversion was contingent for it depended wholly upon a future event which might or might not happen. If it happened, there was a conversion, otherwise there was none and, hence, the date when the contingency was resolved becomes important." (*Rockland-Rockport Lime Co.* v. *Leary*, 203 N. Y. 469, 480.) This contingency not having occurred at the time of his death, an equitable conversion of the intestate's realty had not taken place at that time. It is unimportant that it took place later, because the manner of distribution of the fund depends on the quality of his estate when he died. There are other indications in the terms of the contract which support the conclusion that the parties intended no equitable conversion until the Supreme Court had acted. But one is necessary to allude to, and that one is the

clause in the contract charging the intestate with any loss by fire during the period ensuing between the signing of the contract and the time when it became his duty to convey. (*Sewell* v. *Underhill*, 197 N. Y. 168.) The fund here, therefore, must be deemed to be realty and to be distributable to the four sisters as heirs at law or their legal representatives. The widow has received her full legal share of the proceeds by the judicial award to her of her dower interest.

Tax costs and submit decree on notice accordingly.