JOHN ROBERT EDDINGTON

*vs.*

SALLIE B. TURNER, ARTHUR D. TURNER, and THOMAS H. TURNER, as individuals, and ARTHUR D. TURNER and THOMAS H. TURNER, as Executors of the Estate of Thomas W. Turner, deceased.

*Sussex, May 7, 1942.*

*Isaac D. Short, 2nd,* and *Daniel J. Layton, Jr.,* for Arthur D. Turner and Thomas H. Turner, executors.

*James B. Carey* and *James M. Tunnell, Jr.,* of the firm of Tunnell & Tunnell, for Sallie B. Turner.

THE CHANCELLOR: In October of 1938, Thomas W. Turner made his will, in which he devised certain lands, near Seaford, Delaware, to his sister, Sallie B. Turner, for life. Some three days later, he executed an instrument in writing, under seal, in which he gave John R. Eddington,

of Federalsburg, Maryland, the right, at his option, to purchase the lands so devised, together with other lands belonging to him, for the full purchase price of $10,000; pursuant to the terms of that instrument $100 of that sum was paid when it was signed. Thomas W. Turner died some weeks later. His will was duly probated, and his sons, Arthur D. Turner and Thomas H. Turner, his only heirs-at-law, were the executors therein named, and qualified as such. Under the terms of the option, Mr. Eddington had sixty days within which to notify Turner, "his heirs or assigns," that he would "take, accept and purchase said property at the price and terms aforesaid. In case notice of acceptance" was given as aforesaid, the deed was to be delivered within thirty days thereafter. If Eddington should "not notify the party of the first part, his heirs and assigns" that he elected "to take, accept and purchase said property at the price * * * aforesaid" within sixty days from the date, the "agreement" was to be null and void.

After Mr. Turner's death, but within the prescribed time, Mr. Eddington notified the Turner heirs that he intended to exercise his option rights, and subsequently tendered the balance of the agreed purchase price, but Arthur D. Turner, Thomas H. Turner and Sallie B. Turner refused to convey. On a bill filed against them, specific performance was ordered by this court, and the conveyance was subsequently made by a master, appointed to carry out that order, § 4384, Rev. Code 1935. The whole of the purchase price, less costs, or $9,637.36, was then paid into this court. The executors of Thomas W. Turner claim the whole of that sum as personal property belonging to their father's estate, and that Sallie B. Turner, the life beneficiary of a portion of the land covered by the option, but ultimately sold, has no interest, whatever, in the proceeds of the sale. *Lawes v. Bennett,* (1 *Cox Ch. Cas.* 168, 29 *Eng. Rep.* 1111) and many subsequent English cases apparently support that claim. *Townley v. Bedwell,* 14 *Ves. Jr.* 591; 33 *Eng. Rep.*

648, *Weeding v. Weeding,* 70 *Eng. Rep.* 812; *In re Isaacs,* [1894] 3 *Ch.* 506; 4 *Pomeroy's Eq. Jur.,* (*5th Ed.*) § 1163.

*Lawes v. Bennett* involved an option of the lessee, in a long term lease, to purchase the leased premises within a limited period, for a specified price. That right was exercised some time after the death of the lessor. Prior to the execution of the lease, the lessor had made his will, in which he devised all of his real estate to his cousin, John Bennett, in fee. He also bequeathed all of his personal property, in equal parts, to Bennett and his sister, who were appointed "joint executors." When the option was exercised, Bennett conveyed the leased premises, and the purchase price was paid to him. Some years later, his sister learned that the option had been exercised and filed a bill for an accounting against Bennett. The reporter of the case, in stating the facts prior to the opinion, pointed out that the single question was "whether the premises being part of the testator's real estate at the time of his death, but sold afterwards, under the circumstances aforesaid, the purchase money should be considered as part of the real or personal estate of the testator". Lord Kenyon, then Master of the Rolls, said:

"It is very clear that if a man seized of a real estate contract to sell it, and died before the contract is carried into execution, it is personal property of him. Then the only possible difficulty in this case is, that it is left to the election of Douglass (the lessee who had the option to purchase) whether it shall be real or personal. It seems to me to make no distinction at all."

Lord Kenyon also said:

"When the party, who has the power of making the election, has elected, the whole is to be referred back to the original agreement, and the only difference is that the real estate is converted into personal at a future period."

He, therefore, held that the purchase price was "part of the personal estate of the testator," and that Bennett's sister, the complainant, was entitled to "one moiety thereof."

In *Townley v. Bedwell, supra,* Lord Eldon, referring to *Lawes v. Bennett,* said:

"That case was very much argued, and I do not mean to say that a great deal may not be urged against it."

He, nevertheless, followed it, and it has apparently been adhered to by the English courts ever since. But they seem to have been governed by authority rather than by reason, and have frequently doubted whether the rule laid down in that case was in accord with established principles governing the law of conversion in equity. See *In re Hydon,* [1901] 1 *Ch.* 750; *Re Carrington,* [1932] 1 *Ch.* 1; *Chafee & Simpson Cas. on Equity,* 899 *note.* Moreover, while the rule announced in *Lawes v. Bennett* still applies in England between the heir or devisee of the vendor and his personal representatives, the courts of that country have consistently refused to extend it. It does not apply there between a vendor and the purchaser under an option contract. *Edwards v. West, L. R. 7 Ch. Div.* 858; *In re Adams, L. R.* [1884] 27 *Ch. Div.* 394; 4 *Pomeroy's Eq. Jur., (5th Ed.)* § 1163. It does not apply if, after the option to purchase is given, the owner makes a will, specifically devising the property covered thereby. Under such circumstances, the devisee, the then owner, is entitled to the purchase price if the option is subsequently exercised. *Emus v. Smith,* 2 *DeG. & S.* 722, 64 *Eng. Rep.* 323; *Grant v. Vause,* 62 *Eng. Rep.* 1026. Nor does a conversion take place, as of the date of the option, if the grantee of that right dies, and it is subsequently exercised by his personal representatives. *In re Adams, supra;* 4 *Pomeroy's Eq. Jur.,* § 1163, *note.* Furthermore, under the rule announced in *Lawes v. Bennett,* it is now clear that, in case of the death of the owner before the option to purchase has been exercised, both the land, as such, and the rents therefrom go to his heirs-at-law, or devisee. *Re Carrington* [1932] 1 *Ch.* 1; *In re Marlay,* [1915] 2 *Ch.* 264; *Re Isaacs,* [1894] 3 *Ch.* 506. Under that rule, it is obvious that the equitable conversion of real estate

into personal property does not take place at the date of the giving of the option; it takes place only when the option is exercised; "when the condition is fulfilled, which makes the contract effective." 4 *Pomeroy's Eq. Jur.*, § 1163, *supra.* The recent English cases point that out. *In re Marlay, supra; Re Carrington, supra; Re Isaacs, supra.* In the meantime, in that country, on the death of the owner who has given the option to purchase, the heir-at-law or devisee "has an estate in fee, defeasible upon the exercise of the option." *In re Marlay, supra; Re Carrington, supra;* 4 *Pomeroy's Eq. Jur.*, § 1163, *supra.* It is correctly said that their right to the rents and profits cannot be supported on any other theory. *In re Marlay, supra;* 4 *Pomeroy's Eq. Jur.*, § 1163, *supra.* If the option is not exercised, and the purchase price is not paid within the prescribed time, the heir-at-law or devisee continues to be the real owner. If the option is exercised, the English cases are by no means clear as to the precise reason why the rights of the parties should relate back and the purchase price should be regarded as personal property of the deceased owner, rather than of the heir-at-law or devisee.

Romer, L. J., in the *Carrington* case, supra, aptly said:

"I do not myself understand, apart from the authorities, why this should be so. Conversion, obviously, takes effect from the exercise of the option only, and in the hands of the devisee of real estate the property as from the exercise of the option would be personal and not real estate. That is to say, upon his death it would pass as part of his personal estate, but why the exercise of the option should have the effect of taking away the real estate from the person to whom it ·has been devised and giving it to the person who has the personal estate is what I have never been able to understand."

Furthermore, from a practical standpoint, the inconvenience of the English rule is apparent. Under that rule, years may elapse before it can be definitely and finally determined whether real property, subject to an option to purchase, must be regarded as land, belonging to the heir or devisee of the owner, or whether it may be personal prop-

erty which must be ultimately administered by his personal representatives. Some American cases have, nevertheless, approved and followed *Lawes v. Bennett. McKay v. Carrington, Fed. Cas. No.* 8,841, 1 *McLean* 50; *Keep v. Miller,* 42 *N. J. Eq.* 100, 6 *A.* 495; *Smith Co. v. Anderson,* 84 *N. J. Eq.* 681, 95 *A.* 358; *Newport Water Works v. Sisson,* 18 *R. I.* 411, 28 *A.* 336.

But others, and perhaps the majority, have regarded that case as unsound in principle, and have refused to be governed by it. *Rockland-Rockport Lime Co. v. Leary,* 203 *N. Y.* 469, 97 *N. E.* 43, *L. R. A.* 1916*F,* 352, *Ann. Cas.* 1913*B,* 62; *In re Bisbee's Est.,* 177 *Wis.* 77, 187 *N. W.* 653; *Smith v. Loewenstein,* 50 *Ohio St.* 346, 34 *N. E.* 159; *Inghram, Adm'r., v. Chandler,* 179 *Iowa* 304, 161 *N. W.* 434, *L. R. A.* 1917*D,* 713.

The doctrine of the equitable conversion of land into money rests on the presumed intention of the owner of the property and on the maxim that equity regards as done what ought to be done. *Rockland-Rockport Lime Co. v. Leary,, supra; Inghram, Adr'r., v. Chandler, supra;* 2 *Pomeroy's Eq. Jur.,* (5th Ed.) §§ 364, 365, 368. That rule applies when an absolute, and not a mere possible or contingent conversion is intended. *Rockland-Rockport Lime Co. v. Leary, supra;* 2 *Pomeroy's Eq. Jur.,* § 365, *supra.* It necessarily applies when there is a definite and binding contract to sell and purchase land (*Smith v. Loewenstein, supra;* 2 *Pomeroy's Eq. Jur.,* § 372, *supra*) ; but, when there is a mere possibility of sale, no conversion takes place. 2 *Pomeroy's Eq. Jur.,* § 365, *supra.*

Under the ordinary bilateral contract to sell and purchase land, the owner is not only bound to convey, but is also entitled to the agreed purchase price. No such rule could be applied here. When Thomas W. Turner gave the option to purchase, whether he would ever be obligated to convey was wholly conditional, and dependent upon the acts of another; upon notice and the subsequent payment of the

specified price within the prescribed time. At his death, the option had not been exercised, and he had no enforceable rights against Eddington, and could pass none to his personal representatives. *Smith v. Loewenstein, Rockland-Rockport Lime Co. v. Leary, supra.* The property devised to Sallie B. Turner was then land; even the English cases concede that. When the option was ultimately exercised, that portion of the land sold belonged to her for life, and after her death to the heirs-at-law of the testator. Notwithstanding the English rule, the whole of the proceeds of the sale, therefore, belonged to them, as such, subject, however, to the right of Sallie B. Turner to the interest on such portion of it for life, as this court may determine.

Proof will be taken and solicitors heard on that question.