Bernard S. Meyer, J.
In this action an affidavit of John RAhdí, ah officer Of the corporate defendant, originally filed as part Of the Moving papers on defendant’s motion to dismiss the COMplaint, was offered for the purpose of impeaching Randi’s Credibility. Present throughout the first trial day, Randi was absent On the Second trial day When the affidavit was offered. Objection Was not Made that his signature had not been proved, her Would Sn'ch an objection have availed defendant since the affidavit Was part 'of its earlier moving papers and since defendant^ trial counsel was the notary before whom the affidavit was sworn t'O; Recognizing that a prior written statement is admissible On proof of signature alone and that no warning of a prior inconsistent 'oral statement need be given a party, the court nonetheless Concluded that the affidavit should be excluded because nOt offered at a time that provided defendant a fair Opportunity Of explanation. On further consideration, the court concludes that exclusion of the affidavit Was error, there being no Suggestion that Randi’s absence was due to any deception or misleading conduct of plaintiff or his attorney. A party Must be prepared to offer explanation of his prior inconsistent oral dr written statements, which also constitute admissions, at 'any Stage of the trial (Mindlin v. Dorfman, 197 App. Div. 770) 'and SCe section 343-a of the Civil Practice Act which permits impeachment of a witness (and inferentially a party who is a witness) by any prior inconsistent written statement if subscribed Oh Made under oath. In view of the conclusions hereafter reached, however, the error Was harmless.
The complaint seeks specific performance of, or if that cannot be decreed, damages for the breach of, a contract dated September 20,1958, -by Which defendant corporation agreed to erect and Sell to plaintiffs a house. The purchase price was $30,500 Of Which $1,500 was deposited When the contract was signed, additional cash payments of $5,000 were to be made and the $24,000 balance Was to he paid “ by the purchaser or assigns executing, acknowledging and delivering to the Lending Institution an Extension Agreement or bond satisfactory to the Lending Institution secured by a purchase money mortgage on the above premises, in that amount, payable in monthly installments Of $147.39 together With interest at the rate of Spá% [sic] per áhttum payable Monthly, 'until 25 years after date, of -closing "Mile. Said installments of $147.39 include principal and inter *880 est.” Annexed to the contract was a rider, paragraph 1 of which subordinated the contract to any building loan mortgage theretofore or thereafter made, and paragraph 2 of which provided; “ This contract is subject to purchaser obtaining a mortgage in the sum of $24,000 at b1/^ [sic]. In the event said purchaser is not approved for said Mortgage, this Contract shall be cancelled, made null and void and all monies deposited hereunder shall be returned to the purchaser and there shall be no liability on the part of either party to the other.” Notwithstanding the reference in the payment provision of the contract to payment of $24,000 by the execution of an extension agreement or bond and purchase-money mortgage, it is clear from the fact that no specific “ lending institution ” was referred to and from the provision subjecting the contract to 1 ‘ purchaser 'obtaining ” (emphasis supplied) a mortgage, that the purchaser was not obliged to buy subject to a mortgage nor could he have been prevented from purchasing for all cash, and such was the ruling of this court when sitting at Special Term in denying defendant’s motion to dismiss the complaint (N. Y. L. J., Dec. 1,1959, p. 15, col. 1).
The contract fixed June 30, 1959 as the closing date but did not otherwise limit the time within which nor the person or institution from which the mortgage was to be obtained, nor did it state how cancellation was to be effected. At the time of the closing, Eandi took the information necessary to complete a mortgage application and had plaintiff sign an application form of the Dime Savings Bank in blank with the understanding that it was to be completed by typing in the information supplied. Eandi testified that plaintiff overstated his income during the contract negotiations and that when he, Eandi, received the employer’s verification and then learned that plaintiff’s total income was only $9,100, he advised plaintiff that a mortgage could not be obtained, but at plaintiff’s urging nonetheless agreed to make an application for a mortgage, that he thereafter applied to three institutions, all of which rejected the application because plaintiff’s income was insufficient, and that he orally advised plaintiff that the application had been rejected. Eandi is contradicted concerning the claimed overstatement by plaintiff and his attorney (and by plaintiff’s wife and brother who, it was stipulated, would testify as had plaintiff); concerning whether the plaintiff’s attorney was present during that part of the contract closing which related to plaintiff’s finances, by the same persons; concerning the claimed oral notification of rejection, by plaintiff and his attorney; concerning the date of his application to the Dime Savings Bank, by the bank’s *881 records; concerning the form and content of the data supplied the Queens County Federal Savings and Loan Association, by its officer. Further the amount of time which elapsed between the contract date and January 7,1959, the date on which a letter of cancellation was finally dispatched to plaintiff, is inconsistent with the picture that Randi seeks to paint of plaintiff’s overstatement of income and Randi’s prompt statement to him that on the basis of such an income a mortgage could not be obtained. The fact that defendant on December 21, 1958 signed a binder, and on January 4, 1959 signed a contract with one Levine for the erection of a house costing $35,500 on the same parcel but made no attempt to cancel plaintiff’s contract until January 7, 1959, suggests the motivation for Randi’s present position. The court, therefore, does not credit his testimony and finds that at no time prior to January 7, 1959 had defendant advised plaintiff that his mortgage application had been rejected.
The letter of January 7, 1959 advised plaintiff that an application for mortgage in the amount of $24,000 had been rejected by the Dime Savings Bank of Brooklyn due to insufficient earnings and that the purchase contract was cancelled, made null and void. A check in return of the downpayment was enclosed. On January 13, plaintiff’s attorney wrote defendant returning defendant’s check and stating “ that it is the position of my client that the contract is still in full force and effect and in the event that you take any position contrary thereto you will be liable for the damages sustained by reason thereof.” Notwithstanding the statement made in the January 7, 1959 letter, Dime Savings Bank did not instruct its credit reporting service to report on plaintiff until January 16,1959. The report was made January 19, 1959 and on the same day, Dime Savings sent a letter to defendant declining a loan to plaintiff on the premises in question. On January 29, 1959, defendant again wrote plaintiff, once again enclosing its check in return of the downpayment and advising that the Dime Savings had declined the loan, and that the contract was cancelled. The check was retained by plaintiff uncashed and was introduced as an exhibit at the trial.
Under the contract provision quoted above, it was the plaintiff who was to obtain the mortgage. Defendant having nonetheless undertaken to obtain a mortgage was bound, after it failed, to give plaintiff a reasonable opportunity to finance the purchase through his own sources. (Imperator Realty Co. v. Tull, 228 N. Y. 447; and, see, Judge Christ’s ruling at Special Term in the instant case.) The contract did not make time of the essence and the closing date was almost six months in the future. *882 ScfeiidErit li'ádt hd right hhiiáíéiElly Id caneé! lili édñtfiét'; its dtteinpt by ité léltefs ‘df JEiiuEly 7 átt'd 29 td dd So ’ctihStttúfés répudiatítiii tíf tHb 'cdntrdct By 'dbféhtiáiíí. Déf'eridañt IiEviiig r'epudiat'éd thé, cohíia'ct,,jiialíltiíf $áS htit tiblígEté'd td t'éhdéf p’éfftii’tiidticé (Rockland-Rockport Lime Co. v. Leary, 203 N. Y. 469,484; Cochran v. Taylor, 273 N. Y. 172, 183) Büt, iiáyiñg riiádé ñti actual téñd’éf, fildst 'éstáblish, iñ thi’á aétí'óh, réádihéls áhti titoiiux atiüjLtitii 3i ti Mu (Friederang v. Aldo Co., 199 App. Div. 127, 129; see Eddy v. Davis, 116 N. Y. 247, 251; Rockland-Rockport Lime Co. v. Leary, supra.) (To sh'o-# hñEíiéiál ábili^ pídititiff is htit required, Üef'éñdEíít ürgés, to ihtiW éith'ér a mtiftgEgé fedüíñiitüi'éiit df Ability td páb áll cásfi. Th'é tiaSéi Bti ivhiéh déf'éhdánt réíiél (Birnbaum v. Unger, 135 N. Y. S. 1; Schnitzer v. Price, 122 App. Div. 409) aré bftikerágé ctiffimísiitiíi áBiióílé áxi'd iñ ¿ñy/ébént, the prdof Siib&itterá iñ théffi féti fEr short "df the, |li8yüng ÚiEde iñ this 6E|é. tf'ti IhtiW finEñtilEÍ ‘ability bláiñtif héé'á ’duly éhtiW ChBt tin thé cfiticEl dEt'é hé was jjtiésésSed 8f sufficient ásfets tti éñábié hiña td rEíié th'é difféfénéé bétwééñ xvhát ctitild bé bórrtiwéd by Waf- of mortgEgé tiñ tlié §hbj'ect tiféíñiléá hhd thé totál fe&ñtfBet priéé. Whétiiéf thé étiticál date be tákeh Es thé cóñtfa'ct cítiiiñg daté Br al át tíiné tif $29,fe'O Eñd áiséts at ¿jrBléBt "With E TÉlué df $32,262.36 While á Eubstáñtíai Ipáft tif thoié aiíét! Wefe htit lí'quiÚ, plaiñi;iré '¿tac; a ai»;. u~;v;. avau.wkaa-.i aísl :í. m tti fe thé ñ'écéssa'ry ‘cááh. H‘e VEs htit ré'qüíféd E'ítér h répü'diátion, tif thé cohtfatit Ectñálly tti li'quíáaté hii. a'ss'éhi héf'ofé the éltisiñg date df before tfiaí, büt could prtibérly féLy tiñ th'é 'ctiüft’i ptiVér td feo ffáiñé. iti dé'cré'é as tó givé him E ¡feEstinablé fuñé in ’which to fáiié the féquifé'd cahh. (Adams v. ash, 46 Hun 105; Clark v. Hall, 7 Paige 382.) hiaTcmg Eny féEititiáblé EsiÜfuptitiñ étih'céfhiñg ihfihka'gé of as^étl tiñ li^üidEti'óñ, thé ctiüét édñéhi'áéi Wát piáihtiff wEs hnahciálly áWe hy "cóhvéftihg hfá ásséti fo tiaih aíiS plE'cíhg E Wórtgágé tin thé home he had purchased from defendant to pay thé.contract bfititi. This it iuffici’eht. (Regan v. Berent, 392 Ill. 212; Brown v. Reichling, 86 Kan. 640; Papenthien v. Coerper, 184 Wis. 156; 81 C. J. S., Specific Performance, § 91; and, see, Harris v. Shorall, 230 N. Y. 343.) ^ Slálñtiíf i's, thtiféforé, entitled 5Spécifíc perfóf mañeé Ühlési ha’rVéd by lE'c'h'é’s.
Th~è ~o~&rt ~ô~ñcThd~, ~ ~5èciff~ ~ei'~ô iia'fi6èe ~ ~i~à~t he ~d~c~ree~d ~ic~ôai~C ~of ~1a~hiti~tPs ~c1i~s. O~n M'a~h T~, 19~, ííéVihé obtained E mortgE'ge commftaient Eñd *883 the house for which he had contracted was begun on the plot in question. The house was the same basic model as plaintiff’s but included air conditioning, a finished basement and other extras totaling $6,043.50 more than plaintiff had contracted to pay. It was completed in July, 1959 and since that time has been occupied by Levine under an arragement with defendant, which still holds title. Lis penclens and summons and complaint in this action were filed with the County Clerk on May 15, 1959, but were not actually served on defendant until July 10,1959. It was not shown that defendant had actual knowledge prior to July 10 that plaintiff sought specific performance nor was any evidence introduced concerning any dealings between plaintiff and defendant between the January 29, 1959 letter and July 10, 1959. Concededly plaintiff did not make the progress payment required by the contract or make any attempt to tender performance on the closing date, June 30, 1959, provided for in the contract, nor did plaintiff attempt to obtain a mortgage commitment on his own.
The court concludes that on the foregoing facts it should not impose upon defendant the hardship that would be involved were it required to convey the Levine house to plaintiff at plaintiff’s contract price. It will be noted that plaintiff’s January 13 letter advised defendant that it would be liable for damages if it maintained its position that the contract had been terminated. No mention was made of specific performance, nor was any litigation commenced though plaintiff could have immediately sought a judgment declaring that under the contract he was entitled to a reasonable time to obtain a mortgage or alternately to pay all cash. (See Meyer v. Custom Manor Homes, 4 A D 2d 488.) By limiting his demand in the January 13 letter to damages, by retaining the $1,500 refund check after it was returned to him on January 29, by failing to begin litigation immediately and failing to serve the summons and complaint herein until July 10, 1959 by which time the more costly Levine house had been erected on the plot in question, plaintiff forfeited his right to specific performance. While specific performance may be decreed notwithstanding hardship on a defendant if the hardship is entirely of his own making, plaintiff’s dilatory conduct must, in the instant case, be held to be a contributing cause. True, the defendant did not enter into the Levine contract in reliance on any conduct of plaintiff, but it did complete the more expensive Levine house in reliance on plaintiff’s failure promptly to press for specific performance. The court is not unmindful of the fact that it has not been shown by defendant that installation of the air conditioning, finished *884 basement and other extras had commenced on May 15 when the Us pendens and summons and complaint were filed, but holds that that filing does not constitute such notice as will prevent the application of the doctrine of laches. For that purpose, actual, not constructive, notice is required.
It follows that plaintiff is entitled to damages only. Ordinarily the vendee of a contract for the sale of land is not entitled to recover damages for the loss of his bargain; unless the vendor acted in bad faith, the vendee can recover only his downpayment and expenses. (Cockcroft v. New York & Harlem R. R. Co., 69 N. Y. 201; Northridge v. Moore, 118 N. Y. 419.) It is not necessary to determine whether in such a case expenses include an attorney’s fee for preparing the contract as they would include an attorney’s fee for examining title (Cockcroft v. New York & Harlem R. R. Co., supra, p. 208), for in seeking to avoid plaintiff’s contract in order to obtain a larger price under the Levine contract, defendant placed itself outside the general rule (Cockcroft v. New York & Harlem R. R. Co., supra, p. 204). There is, however, no showing of a difference between the contract price and the actual value of the house plaintiff had contracted to purchase, and plaintiff is not entitled to interest on its deposit since it has, since January 29, 1959, held defendant’s refund check uncashed. Judgment will, therefore, be entered for the $1,500 downpayment, plus $200 which the court finds to be the reasonable value of the services rendered by plaintiff’s attorney prior to January 7, 1959, or a total of $1,700, with interest from the date of judgment only, and with costs. The judgment will provide that simultaneously with payment of the judgment, plaintiff surrender to defendant the $1,500 refund check now in its possession.