# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## GRIZZLE & WIFE v. SUTHERLAND.

### January 14th, 1892.

SPECIFIC PERFORMANCE—*Sale of timber—Fraud—Case at bar.*—Equity will not exercise its discretionary authority to decree specific execution of a contract founded in fraud, mistake or undue advantages, or where, upon change of circumstances, or otherwise, it would be unconscientious to enforce it—as where vendor was illiterate and does not appear to have had the writings explained, or where the price was grossly inadequate, as for instance, in the case at bar, where the property was sold at only ten per cent. of its value.

Argued at Wytheville. . Decided at Richmond. Appeal from decree of circuit court of Russell county, rendered January 10th, 1890, in a cause wherein one Sutherland was complainant, and the plaintiffs in error, William J. Grizzle and Polly, his wife, were defendants. The object of the suit was specific performance of a sale of trees at ten per cent. of their value. Opinion states the case.

*B. L. Hoge,* for appellants.

*No counsel* for appellee.

LACY, J., delivered the opinion of the court.

The bill was filed by the appellee, Sutherland, against William J. Grizzle and Polly, his wife, to obtain specific performance of a contract in writing, made by the said William J.

Grizzle, for the sale to the said appellee of the trees—twenty-four inches in diameter four feet above the surface of the ground—at the price of fifteen cents per tree, and to set aside a sale of the land from the husband to the wife, alleged to have been subsequently made, although the contract of sale was dated before.

The contract sought to be enforced was dated January 2, 1888, and the bill was filed March 18, 1889. The defendants demurred to the bill and answered. William J. Grizzle, in his answer, alleged that the sale to his wife was not fraudulent, nor subsequent to the contract sued on, but *bona fide*, for a valuable consideration, coming from the property of the wife, derived from her father, and antecedent to the alleged contract; that the alleged contract was obtained by fraud and undue influence; that some time in January, 1888, he made a contract with Sutherland when he was sober, and at Sutherland's house, for the sale of these trees, which, however, was to be subject to the ratification of Grizzle's wife, as the land belonged to her; that subsequently Sutherland met him at the store of Smith & Jessee; that by casual meeting apparently with an agent of Sutherland, really interposed for the purpose, he was supplied with whiskey by Sutherland and made drunk a few hundred yards before he reached the store, and was still further supplied with whiskey and made drunk, when the original contract was burned by Sutherland and his signature affixed to another, and the one sued on, of which he had no accurate understanding.

Depositions were taken on both sides, when the court decreed in favor of the plaintiffs; but, varying the relief to meet the case, the purchase-money was not yet due in whole.

The defendants appealed, and the case is here on an appeal from that decree.

The contract sought to be enforced is executory, and not an executed contract; the goods have not been delivered and the purchase-price has not been paid, except a small sum in ear-

nest money, offered back by the defendants. The contract is alleged to be by fraudulent procurement, not only as to the intoxication of the defendant, but that the agency employed by the plaintiff of Smith & Jessee (the defendant being entirely illiterate and unable to read writing or write his own name) was fraudulent and unfair, the said Jessee being interested secretly with Sutherland in the profits of the transaction.

It is clearly proved and admitted by all that the price paid is not over ten per cent. of the well-recognized value of the trees, the subject of the transaction, it being set up by the plaintiff in extenuation of this unfair bargain that the trees were under a lien, which made them the property of a third person, and that therefore he took a mere chance in the purchase, and that ten per cent. of their value was, therefore, a fair price to pay for them, as *he assumed this risk*. But the contract sued on contained *a general warranty*, by which the defendant, Grizzle, covenanted that he, his heirs, and personal representatives would forever warrant and defend the said property unto the grantee, his heirs and personal representatives, and assigns, against the claims and demands of all persons whomsoever. It is alleged by the defendants that the first contract, which, it is conceded, was burned by Sutherland at this store, required a conveyance of such title as he had in the trees, and that in the first contract the trees were to be branded, and the transaction completed within a month, whereas the second contract now sought to be set up provides that they are to be branded whenever the plaintiff might find it to suit him to do so, by which Grizzle was bound to convey, but Sutherland bound to count the trees and bind himself (certainly as to amount) when it might *suit him* to do so, and the contract remained in the hands and possession of Sutherland, and under his control. The depositions of the plaintiff and of the defendants must be rejected, as they are incompetent; the defendants, husband and wife, because of their relation to each other as such, and their respective interest in the suit, and

the plaintiff because of their incompetency. Upon the proofs otherwise in the cause it is clear that the purchase-price is only ten per cent. of the market value of the article every day bought and sold in that market. There was an option upon his timber in favor of a mining company, which Sutherland and his partner, Jessee, had discovered to be an abandoned claim, and were thus possessed of important knowledge, not in the possession of, but withheld from, this illiterate man, the defendant, and the parties did not thus stand on equal grounds, this information being withheld from the defendant. They did not really take any chances, but inserted a general warranty against the owner of the land, which was over 900 acres. The fact that Jessee was interested was withheld from the defendant while at his store, and he was intervening in the matter, and his partner, Smith, was signing and witnessing the contract for this man, who insists that he never made nor executed the same. This is the contract which a court of equity is invoked to specifically perform. Is it such a contract as equity will enforce?

The ground upon which this jurisdiction is exercised by courts of equity is that a court of law is inadequate to decree specific performance, and can relieve the injured party only by a compensation in damages, which, in many cases, would fall far short of the redress which his situation might require. Wherever, therefore, the party wants the thing in specie, and he cannot otherwise be fully compensated, courts of equity will grant him a specific performance (Story's Eq. Jur., sec. 716, Vol I); and they proceed upon the ground that damages at law may not, in the particular case, afford a complete remedy, and not upon any distinction between real estate and personal estate. So courts of equity will not generally decree performance of a contract for the sale of stock or goods, not because of the personal nature, but because the damages at law, calculated on the market price of the stock or goods, are as complete a remedy for the purchaser as the delivery of the stock

or. goods contracted for, inasmuch as with the damages he may ordinarily purchase the like stock or goods. *Id.*, sec. 717, Vol. I. And the proposition may be generally stated that courts of equity will not interfere to decree a specific performance, except in cases when it would be strictly equitable to make such a decree. There is no pretence to say that it is the doctrine of courts of equity to decree specific execution of every contract in all cases where that is found to be the legal intention and effect of the contract between the parties. *Id.*, sec. 750.

Equity will not proceed to decree specific performance where the contract is founded in fraud, imposition, mistake, undue advantage, or gross misapprehension, or where, upon a change of circumstances or otherwise, it would be unconscientious to enforce it. *Id.*, 750*a*.

The specific execution of a contract in equity is a matter, not of absolute right in the party, but of sound discretion in the court. Hence it requires a much less strength of case on the part of the defendant to resist a bill to perform a contract than it does on the part of a plaintiff to maintain a bill to enforce a specific performance. An agreement, to be entitled to be carried into specific performance, ought to be certain, fair, and just in all its parts. Courts of equity will not decree specific performance in cases of fraud or mistake, or of hard and unconscionable bargains, or where the decree would produce injustice, or generally in any cases where such a decree would be inequitable under all the circumstances. *Id.*, 769. See, also, 3 Parsons on Contracts, p. 301.

Equity will not enforce specific performance if there are circumstances tending to render it probable that a fraudulent advantage may have been taken, as where the vendor was illiterate, and does appear to have had the writings explained to him. 4 Md. Ch. Dec., 176.

Equity will not decree a specific performance where a price, only one-half of the value of the property, was agreed on.

Opinion of Chancellor Kent, in *Seymour* v. *Delaney*, 6 Johns. Ch. 222, which contains an elaborate review of the prior decisions. See, also, 3 Cowen, 445. And in the case of *Robinson* v. *Robinson*, 4 Md. Ch. Dec. 182, 183, a price, only one-fourth of the actual value, was held to be certainly such a gross inadequacy of price as to forbid the interposition of equity.

If the inadequacy be so great as to prove fraud, or that the parties could not have intended a contract of sale, in either of these cases a conveyance will not be compelled. (*Callaghan* v. *Callaghan*, 8 Clark & F. 374; *Coles* v. *Teedthick*, 9 Ves. 246). See Tuck. Com., Vol. II, 426, where it is said : " For if the contract be executory, and the seller refuses, on account of the hardness of the bargain, to carry it into execution, if the price be very unreasonable, a court of equity will not force him to do so on the application of his adversary, both because the decreeing a specific execution of contracts is matter of discretion in the court, and because in a hard case, unless the party who seeks to perform has in all things fulfilled the contract to the letter on his part, which rarely happens, he has no right to expect a rigorous enforcement of it in his favor.

" Thus we see that where there is inadequacy merely, without other ingredients in the case, equity is not disposed to assist either party, and he who can place himself in the defensive will, in that court, have the advantage."

" If the contract is not equal, it at least must not be grossly unequal; for, though equity may not, for inequality of price, set aside a contract, yet the same inequality might evidence a refusal to decree performance." *Id.*, p. 404, and authorities cited. See, also, Sugden on Vendors, p. 191; *St. John* v. *Benedict*, 6 John Ch. Rep. 110, and the authorities cited by Mr. Sugden on pp. 191, 192.

It is unnecessary to multiply citations. It is clear from those we have referred to, that this is not such a contract as equity ought to enforce. It is grossly inadequate as to price, it being *only one-tenth* of the actual value of the property sold. It was

not fairly made. The parties did not stand on equal terms, either as to their condition of soberness, nor as to the degree of their information, and the circumstances tend strongly to show a case of fraud in the procurement.

The bill should have been dismissed, with costs, in the circuit court, and that court having decreed otherwise, its decree appealed from will be reversed and annulled, and such decree rendered here as the said circuit court ought to have rendered.

DECREE REVERSED.