GEORGE INGHRAM, Administrator, et al., Appellees, v. SER-
VILLA CHANDLER et al., Appellants.

**CONVERSION:** Equitable Conversion—Not Predicable on Mere
1 Option to Purchase—Descent and Distribution. Equitable con-
version of real estate into personalty may not be predicated
on a mere option to purchase; nor, when such option is actually
exercised, will the conversion thereby effected relate back to
the date of the option contract.

> PRINCIPLE APPLIED: Testator executed his will in 1904.
> He gave to his wife (who was not the mother of any of his
> children) all his *personalty* and a life estate in his real estate,
> with remainder over to his children. In June, 1906, he leased
> 200 acres of land for five years, and in the lease gave the lessee
> an option to buy the land at $65 per acre on or before the ter-
> mination of the lease. Testator died in July, 1906. The wife
> accepted the provisions of the will in her behalf. The lessee
> took possession of the 200 acres, and in 1912, and before the
> termination of the lease, he exercised his option to purchase,
> paid the consideration and received his deed. The wife died
> about 1915, without making any claim to the consideration
> paid for the farm.
>
> Did this mere option to purchase work a conversion of the
> land into personalty? If so, it passed to the stepmother under
> the will, or to her heirs.
>
> If any option did not *ipso facto* and instantly work a con-
> version, did the conversion, effected in 1912 by the exercise of
> the option by the former lessee, date back to June, 1906? If
> so, the consideration paid for the farm passed to the stepmother
> under the will, or to her heirs.
>
> *Held*, no conversion was effected until the optionee exer-
> cised his option to purchase, and that such conversion was ef-
> fective from that date only.

**EXECUTORS AND ADMINISTRATORS:** Real Property and Inter-
.2 ests Therein—Optional Contracts to Purchase—Equitable Con-
version. Principle recognized that the application of the
doctrine of the equitable conversion of real estate into per-
sonalty is to carry out the actual intent of a testator, or one
contracting, *not to defeat such intention.*

*Appeal from Des Moines District Court.—*J. D. SMYTH, Judge.

WEDNESDAY, FEBRUARY 14, 1917.

ACTION by the administrator *de bonis non* of Theodore Wykert against the administrator and beneficiaries of the estate of Elizabeth Wykert, widow of Theodore, to recover the proceeds of sale of certain real estate belonging to the estate of Theodore, the widow being at the time of her death the executrix of the will of Theodore. The trial court found for the plaintiff, and the defendants have appealed.—*Affirmed.*

*Power & Power,* for appellants.

*Seerley & Clark,* for appellees.

EVANS, J.—I. The principal question,

**1. CONVERSION:** equitable conversion : not predicable on mere option to purchase : descent and distribution.

and decisive one, involved in the case is whether, upon the facts appearing in the record, there was an equitable conversion of certain real estate owned in his lifetime by Theodore Wykert. If there was not, then the judgment below should be affirmed, regardless of any other question presented. We therefore give this question our first consideration.

Theodore Wykert executed his will in May, 1904. Ignoring for the moment the dispute between the parties as to the proper construction of the will, we will assume as correct the construction adopted by the appellants, and say that by his will the testator gave to his wife all his personalty and a life estate in his realty, and to his children all his real estate, subject to such life estate. In June, 1906, the testator executed a lease of his farm of 200 acres to Dunn, for a period of five years beginning March 1, 1907, with an option to Dunn to buy the farm at $65 per acre on or before the termination of the lease. In July, 1906, the testator died,

and the will referred to was admitted to probate and his widow was appointed executrix thereof. Shortly before the expiration of the term of the lease, and in January or February, 1912, Dunn exercised the option, and notified the executrix and the other beneficiaries of the estate of his election to purchase the farm at the offered price. The purchase money was accepted from him and the title conveyed to him.

It is the contention of the appellants that the exercise of the option by Dunn worked an equitable conversion of the real estate into personalty, and that such conversion related back to the date of the option; that, therefore, the proceeds of the sale passed under the will to the widow as personalty. The widow having died in 1915, leaving no issue, her administrator and collateral heirs are the defendants and appellants.

The doctrine of equitable conversion is altogether a doctrine of equity, and depends wholly upon the rules of equity. Its real purpose is to give effect to the manifest intent of a testator or vendor, and to treat that as done which by will the testator has directed to be done, or that which, by previous contract with another, both have mutually bound themselves to do. If a testator by his will directs imperatively and absolutely that real estate be sold, then, for the purpose of the distribution of the estate, it will be deemed sold as of the date of the death of the testator, and for the purpose of distribution will be treated as personalty, and not as land. This presents a typical case of the doctrine of equitable conversion. The doctrine, however, is not confined to directory provisions in a will. It is applied to those cases of conversion resulting from the contract of the decedent, whereby as vendor he has undertaken to sell to a vendee who has undertaken to buy his land. Such a contract, mutually enforcible for and against vendor and vendee, is a present equitable conversion of land into per-

sonalty and of personalty into land. It becomes such by the act of the parties themselves. When such contract is fully executed, and the legal title is fully conveyed by the vendor to the vendee, then it is a conversion actual and complete, without need of any aid of equity. But when the contract is executory, and contemplates time for its full performance, the vendor retaining legal title and the vendee entering into possession, then equity designates the vendee as the equitable owner of the land, and the vendor as a trustee holding the legal title in trust as security for the purchase price. The foregoing is a typical case of the application of the doctrine of equitable conversion by contract.

If the doctrine of equitable conversion is to be applied to the case at bar, it is a conversion by contract, and not by the terms of the will. The consideration of the will becomes important only because, under its terms of distribution, the personalty goes in one direction and the realty in another.

The distinction between the case at bar and the typical contract case above set forth is that there was no contract of sale entered into by the decedent. The option was a mere offer on the part of the decedent, an offer, however, which could be accepted by Dunn at any time within 5 years. It is urged for appellants that the contract, such as it was, was binding upon Wykert, and therefore enforcible. The broad proposition is urged that, if the written option signed by the decedent was enforcible against him, then the acceptance of the offer within the time limited worked an equitable conversion as of the date of the offer; that there is no distinction in the application of the doctrine as between an option contract and a contract of purchase and sale, presently and mutually binding upon both vendor and vendee.

The specific question thus raised has never been presented to us heretofore. We have, however, passed upon

questions that are closely akin thereto and indirectly involved therein. The logic of those cases quite clearly points the way herein.

Taking the typical case of equitable conversion by contract, as above stated, we are fully committed to the doctrine that such a contract works an equitable conversion; that, in case of the death of the vendor, his interest in the contract would pass as personalty; that, in case of the death of the vendee, his interest would pass as realty; that a judgment against the vendee would become a lien upon the property as real estate; that a judgment against the vendor would not become a lien upon the property as real estate. See *In re Estate of Miller,* 142 Iowa 563, and authorities therein cited. We have held also that such a contract becomes a credit in the hands of the vendor and is subject to taxation as such. *Rampton v. Dobson,* 156 Iowa 315, 321. We have held also that there is a vital distinction between such a contract and a mere contract of option. We have held that a contract of option does not create a credit in favor of the proposed vendor. *In re Assessment of Shields Brothers,* 134 Iowa 559. We have held frequently that a contract of option confers upon the optionee no interest in real estate. It is not necessary to serve 30 days' notice of forfeiture in order to terminate it. Even when the option is given for a consideration, and is in that sense enforcible, it is enforcible *after* the exercise of the option and not before. If the optionee elects to accept the offer, he may then enforce. But by such election he also binds himself to buy, and the contract created by his election to accept becomes mutually binding upon both parties. It is only when the optionee binds himself to buy that the equitable conversion takes place. In the *Rampton* case, 156 Iowa 321, we said:

"An 'option' is not an actual or existing contract, but merely a right reserved in a subsisting agreement. It is a continuing offer of a contract, and if the offeree decides to

exercise his right to demand the conveyance or other act con-
templated, he must signify that fact to the offerer.    *   *   *
'It is only when there has been an acceptance of a proposal
to sell that the vendee becomes in any sense the equitable
owner of the subject-matter of the option.' "

The case of *Sheehy v. Scott*, 128 Iowa 551, is very much
in point, if not quite decisive of this question.  That case
involved a contract which we held to be a mere option con-
tract.  The contract on its face was a complete undertaking
by the vendor to sell.  It acknowledged receipt of $50 paid
by the proposed vendee.  It specified the remaining consid-
eration to be paid, with a provision for the forfeiture of the
$50 if the remaining consideration were not paid.  There
was no undertaking by the proposed vendee to buy or to
pay.  Before any further performance by the proposed ven-
dee, the vendor died.  We held that the property passed as
realty, and that descent was cast upon the heirs of the ven-
dor.  A creditor of one of the heirs of the vendor levied an
attachment upon the interest of his debtor.  The proposed
vendee intervened, claiming the property.  We held that, at
the time of the death of the alleged vendor, the alleged
vendee had no interest in the real estate, and that the real
estate in question passed by descent as the realty of the
alleged vendor; in other words, we held, in effect, that the
contract of option did not work an equitable conversion.

On the other hand, in *Beaver v. Ross*, 140 Iowa 154,
which involved a typical contract such as we have above set
forth, where vendor and vendee mutually bound themselves
to each other, we held that the interest of the vendor passed
at the time of his death as personalty, and that a previous
judgment against one of the heirs did not attach as a lien up-
on the alleged interest of the heir in the real estate.  The ap-
pellant lays considerable stress upon *In re Estate of Bern-
hard*, 134 Iowa 603, 606.  That case, however, involved the
typical contract already referred to, and not at all a mere

contract of option. In that case, as in the *Beaver* case, the vendor bound himself to sell and the vendee bound himself to buy. True, it was an executory contract, and was performed after the death of the vendor, but that fact does not stand in the way of the doctrine of equitable conversion. It was held in that case, as in the *Beaver* case, that the equitable conversion existed at the date of the death of the testator. Stress is laid by appellants upon the following statement in our opinion in that case:

"It is also true that, when the title passes under the terms of the contract, it relates back to the date of the contract, and the vendor is treated as holding the legal title as trustee for the purchaser."

On the strength of the foregoing quotation, the appellants contend in the case at bar that, when the optionee elected to exercise his option and thereby to bind himself to a purchase, such purchase related back to the date of the offer or option. Appellants overlook the fact that to "relate back to the date of the *contract*" is one thing, and to "relate back to the date of the *offer*" is another. Granting, in the case at bar, that the transfer of title did relate back to the date of the contract, it does not follow that it would relate back to the date of the original offer. There was no *contract* of purchase and sale until Dunn elected to accept the offer. The date of such election was the date of the contract. Up to that date, Dunn had no interest in the real estate as such, according to our holding in *Sheehy v. Scott*. To the same effect are the following cases from other jurisdictions: *Gilbert v. Port*, 28 Ohio St. 276; *Caldwell v. Frazier*, (Kans.) 68 Pac. 1076; *Bras v. Sheffield*, 49 Kans. 702; *Ex parte Hardy*, 30 Beavan 206; *Richardson v. Hardwick*, 106 U. S. 252.

Appellants purport to make the following quotation from the *Bernhard* case:

"It is settled that an estate under contract of sale is regarded as converted into personalty from the time of the contract, notwithstanding an election to complete the purchase rests entirely with the purchaser, and, if the seller die before the election be exercised, the purchase money when paid will go to the executors as assets."

It is urged that this is authority for their position that the doctrine of equitable conversion applies to an option contract. Counsel overlook that the purported quotation is set forth in the opinion as a quotation from *Kerr v. Day*, 14 Pa. St. 112. The *Kerr* case fully supports our *Bernhard* case, and was cited for that reason only. Assuming that the *Kerr* case goes further as pertaining to option contracts than we had occasion to go or to consider in the *Bernhard* case, its citation by us was not a pronouncement upon any other question than that under consideration in our own case. Authorities are not wanting in support of appellants' position, and some of these we will consider presently; but it does not appear from the briefs that the Supreme Court of Pennsylvania has ever actually passed upon the particular question. Direct authority upon the question here discussed is very rare indeed. Directly in point, however, are *Smith v. Loewenstein*, 50 Ohio St. 346 (34 N. E. 159); *Rockland-Rockport Lime Co. v. Leary*, 203 N. Y. 469 (97 N. E. 43).

The English cases lend support to the contention of appellants. The original case in England is *Lawes v. Bennett*, 1 Cox 167, decided by Lord Kenyon 100 years ago. While the case has been deemed a binding precedent, and has been followed by the English courts, it has been so followed reluctantly, and seldom without criticism. In *Townley v. Bedwell*, 14 Ves. 591, it was said:

"That case (*Lawes v. Bennett*) was very much argued, and I do not mean to say that a great deal may not be urged against it."

In *Collingwood v. Row*, 3 Jur. (N. S.) 785, the vice chancellor said:

"The only question, then, is whether this is to be taken as realty or personalty; and I confess I should have felt very great doubts if it were *res integra*, as very great inconveniences might follow; for after the enjoyment for many years by the devisor, on the expression of option the realty may be converted into personalty, and not only converted, but the whole may be taken away and given to another. It is a very singular and inconvenient state of things; but if the question has been decided by so great a man as Lord Kenyon, * * * in *Lawes v. Bennett*, whatever doubts I might entertain as to that decision, I am bound to follow it."

The case has also been criticized by the courts of this country. In *Rockland-Rockport Lime Co. v. Leary*, 203 N. Y. 469 (97 N. E. 43), the New York Court of Appeals said:

"The doctrine of equitable conversion rests on the presumed intention of the owner of the property and on the maxim that equity regards as done what ought to be done. The conversion usually becomes effective at the date of the instrument expressing the intention, if a deed or contract, and, if a will, at the date of the testator's death. This is the rule when an absolute and not a contingent conversion is intended. In the case before us no conversion was intended unless the option was exercised, and the conversion was contingent, for it depended wholly upon a future event which might or might not happen. If it happened, there was a conversion, otherwise there was none, and hence the date when the contingency was resolved becomes important. The lessor had the power to thus provide, and, in so providing, what was his intention as presumed from what he wrote, there being no other guide except the surrounding circumstances, so far as they bear on his intention? As he

intended no conversion unless the contingent event happened, he is presumed to have intended none until that event happened, for that would be the natural date to have it take effect in order to avoid confusion if not disaster. Upon this theory the heirs would take the land and enjoy it as land, just as the heirs in this case have done, until the contingency became a certainty by the exercise of the option when they would take the purchase money instead of the land, precisely as their ancestor would have, had he survived until that time.  The maxim underlying the doctrine of equitable conversion rests on a duty to do something, but in this case until the option was exercised there was no duty and it could not be known whether there ever would be a duty.  Hence, the conversion should not be presumed as of a date earlier than the date when the duty became certain, as that would be unreasonable and the same in effect as if the duty had existed from the outset.  If the lessor had made the duty absolute instead of contingent, he could fairly be said to have intended that conversion *must* take place at some time, but as he made it contingent he could not have intended that result.  *  *  *  Hence the lessor must in reason be presumed to have intended that the discharge of the duty should take effect for all purposes only from the date when by his direction the duty became absolute, through the occurrence of an uncertain event. To hold otherwise would carry a rule, unknown to the common law and created by courts of equity because founded on reason, far beyond the bounds of reason.  As intention is involved, or presumed intention which must be reasonable, the manifest inconvenience of holding otherwise cannot be ignored.  *  *  *  The courts of this state have not adopted Lord Kenyon's application, and we decline to adopt it.  We hold that conversion was effected only from the date when conveyance became a duty, and that it did not relate back to the date of the lease."

As already indicated, the doctrine of equitable conversion is a doctrine of equity, and not a rule of law. Its intent is to lengthen the arm of the court of equity to do justice in a particular case by giving effect to the intention of a testator. Its application is always withheld if it should appear to foil the intent of the testator or to work injustice in the particular case. The laws of inheritance in England, whereby all children save the eldest are barred from the inheritance of real estate, afford some reason for a more radical application of the rule of equitable conversion in England than in this country. The conversion of realty into personalty tends there in the direction of equality and natural justice. We offer this excuse on behalf of Lord Kenyon for a rule which appears to us quite illogical and difficult of equitable application, at least under the conditions existing in this country. In this state, the question is *res integra*, and we are at liberty to follow what seems to us the more logical and practical rule. Clearly, in this case there was no conversion at the time of the death of Wykert. If there was no conversion, then the fee of the realty passed by the terms of the will to the children, and the personalty to the widow. That was the intention of the testator as expressed therein. If this distribution must now be undone and recalled by the act of Dunn five years thereafter, and if the property once awarded to the children must be taken away from them and awarded to the widow, by whose intention is such change made? To whose will and election are the beneficiaries of the first distribution made subject? Surely not the will and intention of the testator; for that spoke in the first distribution. The rights of Dunn are in no manner affected by the question whether the farm passed as realty in the first distribution or otherwise. Whichever way it passed, he was no less entitled to exercise his option. Why then, in reason or equity, should the exercise of his option after the death of the testator be

determinative upon the distributees as to the extent of their respective interests in the estate as between themselves? If Dunn had exercised his option in the lifetime of the testator, the will could have been adapted to the existing facts, and the intention of the testator could have been expressed in the light of such facts. Is it not more reasonable to say that, if Dunn had no interest in fact in the real estate as such at the time of the death of Wykert, then his subsequent acquisition of interest by the exercise of his option could not have the effect of taking the property of one beneficiary of the will and paying the proceeds to the other? Granting him the right of conversion as of the date of his acceptance of the offer under the option, it would be a conversion in the hands of the devisee under the will, and this would entitle the devisee to take the proceeds of the conversion in lieu of the land. The contrary holding would put these distributees, the children on the one hand and the widow on the other, at the arbitrary mercy of Dunn. If he allowed his option to lapse, it would allow the benefit of the devise to rest with the children. If he chose to exercise his option, it would take from the children not only the land but the proceeds thereof, and award the same to the widow. Such a situation would furnish to Dunn an opportunity of duress upon one or the other of the contending interests. He would be in a position to call for a division of spoils. Likewise, the contending beneficiaries would be put naturally under the pressure of temptation to influence the choice by improper inducements. Such a situation would not aid in carrying out the intention of the testator, but on the contrary would tend to the dissipation of his estate to the benefit of a third party; in other words, Dunn would be thereby able to force the beneficiaries of the will into a contest for which neither of them could have any legal remedy, and which could not

be determined in any other manner than by his own arbitrary conduct.

It is clear that Dunn had no manner of interest in the question whether his exercise of his option worked an equitable conversion as of the date of his option. His rights were the same either way. We think it equally clear that his election subsequent to the death of Wykert should not be determinative of the interests of the beneficiaries of the will as between themselves. To hold otherwise would be to say that the intention of the testator, expressed in the will, was two-headed and contradictory, in that it appeared therefrom that the children should take the farm and also that they should not take it, nor any interest therein. It puts the testator in the attitude of knowing and intending that the only provision made in his will for his children had been rendered uncertain by the giving of the option, and of intentionally wagering the entire benefits of such provision for his children upon the future election of the optionee. The situation thus created seems to us so clearly unreasonable, illogical and inequitable that it ought not to be brought about by the aid of equitable presumption. For a general discussion of the subject of equitable conversion, see 6 R. C. L. 1065, 1 L. R. A. (N. S.) 400, 4 L. R. A. (N. S.) 365, 12 L. R. A. (N. S.) 1029, 20 L. R. A. (N. S.) 65, 20 L. R. A. (N. S.) 117, 39 L. R. A. (N. S.) 817. We think it clear that sound reasoning, as well as the trend of our own previous cases upon the kindred question, requires us to sustain the holding of the trial court.

II. Notwithstanding that our conclusion announced in the foregoing paragraph is decisive, it may not be amiss to look at the question there considered from a somewhat different point of view. As already indicated in the foregoing paragraph, the purpose of the application of the doc-

2. EXECUTORS AND ADMINISTRATORS : real property and interests therein : optional contracts to purchase : equitable conversion.

trine of equitable conversion is to enable the court to carry
out the manifest intention of the testator, and thereby to
work an equitable result. Turning to the will of the testa-
tor, it is contended by appellants that testator thereby
gave to his wife all his personal property. This contention
is not conceded by appellee, and a question of construc-
tion is involved also at this point. We will, however, as-
sume the correctness of appellants' contention, for the sake
of the argument. The testator gave her also the life use of
all of his real estate. He gave to his children all the re-
mainder of his property, real and personal, such as should
remain after the death of the wife (who was not the mother
of his children). There was no other provision for his chil-
dren than herein indicated. The will on its face appears
natural and reasonable. It indicates a desire to make
abundant provision for his wife during her life. It also in-
dicates an intention that all the residue should go to his
children. So far as appears in this record, the real estate
involved herein comprises the bulk of the realty belonging
to the estate. The widow elected to take under the will.
The question here involved was never raised by the widow,
though she lived for nine years after the death of her hus-
band and for more than three years after the exercise of
the option by Dunn. Upon her death, her estate descended
to her collateral heirs, and these are they who claim the ap-
plication of this doctrine of equitable conversion for the
purpose of carrying out the *intention of the testator*. Read-
ing the will of the testator, and observing that it provided
naturally and reasonably for wife and children, the only
persons who had immediate claims upon his bounty, can it
be said therefrom, even in the light of the subsequent lease
and the option contained therein, that he intended wholly
or substantially to disinherit his children and to permit
the bulk of his estate to pass ultimately by descent to the
collateral heirs of his widow? If such intention and result

must be found of necessity from the very terms of the will, so be it. But such a result is not entitled to the aid of a merely equitable presumption. It is needless to pursue the subject further. For the reasons indicated in the first division hereof, the decree of the trial court is—*Affirmed.*

GAYNOR, C. J., LADD and SALINGER, JJ., concur.