# Richmond

MARIE N. CHRISTIANSON, ET AL. V. BOYD M. BROSIUS AND EVA W. GAINES.

March 4, 1946.

Record No. 2991.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Spratley, JJ.

The opinion states the case.

*J. H. Rives, Jr.,* and *Albert F. Anderson,* for the appellants.

*Charles Pickett,* for the appellees.

GREGORY, J., delivered the opinion of the court.

A suit in equity was instituted by Eva W. Gaines and Boyd M. Brosius against Marie N. Christianson and Fred H. Christianson, her husband. The parties will be referred to in accordance with their respective positions in the trial court. The purpose of the suit was to compel the defendants to perform specifically a certain written contract for the sale of a tract of 82½ acres lying in Loudoun county. The chancellor entered a decree granting the relief requested and compelling the defendants to perform specifically the contract. The defendants are here as appellants asking for a reversal of the decree.

All of the evidence was taken by deposition, and it is conflicting. The main witnesses were interested in the

outcome. The two complainants and their attorney, Mr. Wilbur C. Hall, were the chief witnesses for the complainants, and their testimony, in all substantial and pertinent particulars conflicted with that of the two defendants. The chancellor has accepted as true the testimony of the complainants and entered a decree in their favor.

From the evidence it appears that the appellants acquired the tract of land and the improvements thereon on July 31, 1942. The title was vested in them in equal shares, with the right of survivorship as at common law. In the latter part of February, 1943, Mr. Christianson, who was a retired marine engineer, was urged to return to the merchant marine service. He reported for duty in a very short time, having had little time to attend to his affairs. The night before he left he and his wife were at the home of Mr. T. W. Gaines, and they discussed the sale of the farm. Christianson stated that he wanted $12,000 for the property, and Mr. Gaines and his wife testified that they made a counter proposition of $10,700, but that was not acceptable. Mr. Christianson further testified that he had never offered the place for less than $12,000, nor had he ever authorized anyone to sell it for any price.

After Mr. Christianson left home negotiations were renewed by Mr. and Mrs. Gaines, who were acting on behalf of their daughter, Eva W. Gaines, and Boyd M. Brosius, the complainants. Later the complainants themselves began negotiations with Mrs. Christianson.

Just before Mr. Christianson left the continental waters of the United States he had his will prepared by a gunnery officer on his ship who had previously been a practicing lawyer. He executed the will and placed it in the mail directed to his wife. The will bore the date of March 24, 1943, and was received by Mrs. Christianson prior to April 1, 1943.

In the seventh clause of the will there appeared this provision:

"7th. I give and grant unto my wife full and complete power of sale of all of my property, including the aforesaid

real estate, in such manner as she in her judgment may deem best."

In other portions of the will the testator made certain devises and bequests, and he named his wife as his executrix.

Mrs. Christianson testified that she thought the seventh provision in the will vested her with power and authority to sell the farm during Mr. Christianson's absence.

On April 1, 1943, Miss Eva W. Gaines and Mr. Brosius, the complainants, arrived at the Christianson home and offered Mrs. Christianson $10,700 for the farm and Mrs. Christianson accepted the offer. Upon inquiry, Mrs. Christionson stated that she was authorized to make sale of the farm and, according to the testimony of the complainants, she exhibited to them a typewritten document consisting of two pages, the first of which was a will, and the second a power of attorney signed by Mr. Christianson and witnessed by two persons. Thereupon, the complainants requested, and Mrs. Christianson agreed to accompany them to the office of their attorney, Mr. Wilbur C. Hall. They related to Mr. Hall the terms of the verbal agreement and the complainants employed Mr. Hall to prepare the necessary papers. There is conflict in the testimony as to whether Mr. Hall inquired about Mrs. Christianson's authority to sell her husband's interest in the real estate before he prepared the contract or after he prepared it. In any event, he did inquire for the authority. After the paper was presented to Mr. Hall he stated that the second sheet of the document was a power of attorney authorizing Mrs. Christianson to sell and convey the farm on behalf of her husband. He further testified that this power of attorney was witnessed by two witnesses but that it was not certified by a notary public so that it might be recorded upon the records in the clerk's office.

The contract was prepared by Mr. Hall and executed by the complainants who made a down payment of $500, to be held by Mr. Hall, and the contract was also signed by Marie N. Christianson in her own right and as agent for Fred H. Christianson, her husband.

Mr. Hall, not being satisfied with what he described as the power of attorney because it could not be recorded, stated that the deed should be signed by Mr. Christianson, whereupon, he prepared a deed and it was mailed to Mr. Christianson but was not received by him.

An extension of time for the performance of the contract was granted Mrs. Christianson, and later she refused to carry out the contract. Before Mr. Christianson returned to the United States the complainants instituted their suit.

There are several assignments of error but the one which is determinative is whether or not the evidence supports the conclusion of the court that Mr. Christianson executed and delivered to his wife a power of attorney in which she was authorized to sell his interest in the farm. The case therefore turns upon resolving that crucial question of fact, and upon that point the evidence is highly conflicting.

In *Shenandoah Valley Nat. Bank* v. *Lineburg*, 179 Va. 734, at p. 737, 20 S. E. (2d) 541, at p. 543, the court held:

"The weight to be given to a chancellor's decree where a cause has been submitted upon depositions, we have often had occasion to consider.

"A late case on that subject is that of *Lavenstein* v. *Plummer*. The opinion in that cause was handed down on April 13, 1942, *ante*, [179 Va.] page 469, 19 S. E. (2d) 696.

"Chief Justice Campbell in *First Nat. Bank* v. *Weinburg*, 165 Va. 433, 182 S. E. 250, thus states the law:

" 'While it is fundamental, as held by Chief Justice Prentis in *Clevinger* v. *County School Board*, 139 Va. 444, 124 S. E. 440, that this court cannot avoid the duty of weighing the evidence when its sufficiency is fairly challenged, that doctrine does not relieve the complaining party of the burden of showing error. To raise a doubt is not sufficient. Absolute certainty is rarely attainable in court proceedings, especially where there is a conflict of evidence or the element of fraud is one of the paramount issues.' "

See also, *Harris* v. *Citizens Bank, etc., Co.*, 172 Va. 111, 200 S. E. 652.

The weight to be given the decree of the trial court,

when the cause has been submitted upon depositions, as was the case here, is controlled by those principles.

■■ There are general rules and principles which govern the application of specific performance, but relief is granted or refused according to the circumstances of each particular case. It is within the sound discretion of the court. See Digest of Virginia and West Virginia Reports (Michie), Permanent Supplement, Vol. 5, p. 449, and cases there cited.

■ Specific performance will not be denied simply because the evidence is conflicting. If a denial by a party against whom a contract is sought to be enforced were sufficient to defeat the right it is quite conceivable that this remedy would soon cease to be efficacious.

In the case at bar there is no question but that the contract, if authorized by Mr. Christianson, is valid and enforceable. It is clear, definite, unambiguous, and complete. We, therefore, have only the one fact to resolve, and that is did the court have before it sufficient evidence to establish that Mr. Christianson empowered his wife to sell the farm. If it did, then the decree should be affirmed and the contract carried out by both defendants.

In a consideration of this cause, our duty, however, requires us to examine and consider all of the evidence in the light of the foregoing rules. It must be borne in mind that the allegation in the bill of complaint is that Christianson executed a power of attorney authorizing his wife to sell the farm. This is the language of the allegation:

"Complainants aver that at the time of the execution of said contract by the said Marie N. Christianson in her own right and as agent for Fred H. Christianson, her husband, the said Marie N. Christianson had in her possession and produced and exhibited before your complainants and Wilbur C. Hall, attorney, a power of attorney, giving her the power and authority to sell said real estate."

The trial court has found that the allegation has been sustained by proper proof. The two complainants and their attorney, Mr. Hall, testified positively that Mrs. Christianson

exhibited to them a power of attorney from Mr. Christianson authorizing her to make sale of the farm. Miss Eva Gaines, one of the complainants, testified that when she and Mr. Brosius were at Mrs. Christianson's home on April 1st Mrs. Christianson exhibited to her a paper containing authority for her to act in Mr. Christianson's behalf. This document, according to Miss Gaines, consisted of two pages; the front page was a will, and the second page was "distinctly a power of attorney". She further testified that she read the power of attorney but did not read the will, and that the paper which was introduced in evidence in this cause and labelled exhibit No. 2, the will of Mr. Christianson, was not the paper which was exhibited to her on April 1st. She further testified that this same paper which had been exhibited to her was shown Mr. Hall when they reached his office, and that Mr. Hall, in their presence, stated that the paper gave Mrs. Christianson the right and power to sell the farm but that it did not have a notary's certificate attached and therefore was not sufficient to be recorded in the deed book.

Mr. Brosius, the other complainant, also testified that he accompanied Miss Eva Gaines to the home of Mrs. Christianson on April 1st, and that Mrs. Christianson showed him the authorization for her to proceed to sell the farm. He said that the paper which he saw on that occasion conferred upon Mrs. Christianson the absolute power to sell the farm, and that it consisted of two sheets. Mr. Brosius further testified that he could not recall the exact phraseology of the paper but that it satisfied him that it was sufficient for her to act upon, that it was signed and witnessed, but that it was not acknowledged before a notary public.

Mr. Hall testified that on April 1, 1943, the complainants and Mrs. Christianson came to his office and that the complainants requested him to draw up the necessary papers to carry into effect the sale of the farm by Mrs. Christianson to them. He said that upon inquiry of Mrs. Christianson as to her authority to sell—he knowing that the property stood in the name of both Mr. and Mrs. Christianson—Mrs. Chris-

tianson produced a paper which he examined. This is a portion of his testimony:

"I can recall it very distinctly. I pulled out the extension of my desk and laid it to my left. I read the paper before the contract was signed. My recollection is that it constituted two pages. The paper that I saw gave Mrs. Christianson the right to sell the property. The trouble with the paper was that it was not acknowledged and I so advised Mrs. Christianson in the presence of Mr. Brosius and Miss Gaines."

Mr. Hall also testified that he prepared a deed and in it made provision for the signature of Mr. Christianson. Mr. Hall also testified as follows:

"The contract was reduced to writing and signed by Mr. Brosius, Miss Gaines, and Mrs. Marie N. Christianson in her own right and as agent for Fred H. Christianson. This contract has been offered in evidence as Exhibit No. 1.

"The deed which I prepared was delivered to Mr. Brosius and Miss Gaines, to be mailed by them in Washington, from my office. Mrs. Christianson wrote a little note to her husband which was enclosed in the envelope with the deed, which she gave to Mr. Brosius and Miss Gaines to mail. I, of course, did not see the contents of that note.

"At the time of the signing of the contract, the sum of five hundred dollars was left in the hands of the firm of Hall and Hall by Mr. Brosius and Miss Gaines. The contract provided that the matter should be closed within thirty days, when the remainder should be paid in cash. I think I should say that Mr. Brosius and Miss Gaines had arranged with me for a loan of six thousand dollars on the property, which was, of course, to be a first deed of trust. They were in a position, according to their statement to me, to pay the balance in cash.

"Some time prior to the first day of May, I was advised by Mrs. Christianson that she had been unable to locate her husband, and I prepared, on the twenty-seventh day of April, 1943, an agreement extending the period for the closing of this transaction for a period of thirty days from April

30, 1943. When this extension agreement was drawn, Mrs. Christianson felt that since she ought to be certain that the transaction would be closed, that Mr. Brosius and Miss Gaines should put up more money. They left with us an additional check for fifteen hundred dollars."

Again he said:

"Adverting for a moment to the paper which gave her the authority to sell, I do not think that the paper which has been offered in evidence here is the paper which I saw. My recollection is that it was two pages. There is not the slightest doubt in my mind that it gave Mrs. Christianson the right to sell, the authority to sell, but the trouble with it was that it was not acknowledged before a notary public, which would constitute a proper chain of title.

"Q. Would you say that it made, constituted, and appointed her as attorney in fact to sell and convey his real estate?

"A. There is not the slightest doubt about that, in my mind. My recollection, too, is that it was somewhat of a combination of will and power of attorney, but the thing that is impressed upon my mind and has been all the time, that it gave her the right to sell and the right to convey, and the only trouble was that it was not acknowledged so that it could be recorded."

Mr. Hall was asked this question: "Representing Mr. Brosius and Miss Gaines in the preparation of this contract, were you entirely satisfied with the authority of Mrs. Christianson to execute a valid contract in the name of herself and her husband", to which he replied: "I was entirely satisfied, and I vouch my reputation as a lawyer that the paper gave her the proper authority." And in explanation of why the power of attorney was left with Mrs. Christianson Mr. Hall was asked, "Do you recall whether or not this power of attorney also gave her the right to withdraw funds and cash checks and things of that kind?" He replied, "It was very broad and encompassed everything that an attorney might do." He was asked, "So that she would have

further need for that paper then in transacting his affairs?".
He replied, "She would, that is correct."

Miss Mary P. Stabler, executive secretary of American Red
Cross of Loudoun county received the following cablegram
which was not dated:

"First assistant engineer Fred H. Christianson through field
director his distant station requests advise wife Box 124,
route 2, Leesburg, Virginia, do not sell farm. Wants welfare
report and wife's decision. In reply please cite soldier's full
name."

Miss Stabler sent this message in reply:

"Farm is still ours until you sign deed. Family all fine.
Love, wife."

The cablegram to Miss Stabler supports the belief that
Mr. Christianson had given his wife prior authority to sell the
farm and that afterwards he had changed his mind. Miss
Stabler said the cablegram was undated but that it was
received "a year ago, or a little bit less than a year I would
say". She was testifying on April 26, 1944. If Mr. Chris-
tianson had not authorized his wife to sell the farm it is diffi-
cult to understand why he directed her in the cablegram not
to sell and requested "his wife's decision". He admits in his
testimony that he was afraid she might sell the farm. He
also said they had talked about selling before he left but
"after I left I had a chance to think it over" and had
changed his mind.

The complainants have shown beyond doubt that they
are ready and eager to perform the contract and, if their
evidence is to be believed, they have also shown the exis-
tence of the power of attorney which was last traced to the
hands of Mrs. Christianson, and sufficient of its contents
which duly authorized Mrs. Christianson to make the sale.
If this be true, then the contract is one which may be spe-
cifically enforced in equity.

The evidence of the defendant, Mr. Christianson, was to
the effect that he had never executed the power of attorney
but that he had executed a will which was prepared by the
gunnery officer on his ship who was a lawyer. That will

was mailed to Mrs. Christianson and she received it. It was introduced in evidence as exhibit No. 2, and it appears to be regular upon its face with the exception that clause No. 7 confers upon Mrs. Christianson full and complete power of sale of all the testator's property, including the farm "in such manner as she in her judgment may deem best". Mr. Christianson says that this was the only legal document which he signed, and Mrs. Christianson testified that it was the only document which was presented to Miss Gaines, Mr. Brosius, and Mr. Wilbur C. Hall.

If it be true that only the will was exhibited to the complainants and Mr. Hall, it alone was not sufficient authority for Mrs. Christianson to have made sale of her husband's real estate, because the will could not have become effective until the death of Mr. Christianson. During his lifetime he could have changed or revoked his will. Certainly Mrs. Christianson could not have exercised any authority conferred by the will until after the testator's death. If the defendants are correct in stating that the will was the only document presented to the complainants and Mr. Hall, then the defendants should have prevailed in the trial court, but the trial court in its decision has held adversely to the testimony of the defendants, and in fact it has found upon the evidence of the complainants that there was another separate paper other than the will which contained a valid power conferring upon Mrs. Christianson adequate authority to sell the farm.

It is possible that the conclusion reached by the trial court, if permitted to stand, might result in an injustice to the defendants, whose testimony may be true, to the effect that Mr. Christianson never executed the power of attorney but only the will. It is also possible that the court was not justified in accepting as true the testimony of the complainants and their attorney, Mr. Hall. However, courts are presided over by judges who are only human, and whose findings on issues of fact depend solely upon a proper consideration and evaluation of testimony, and the acceptance of that which they believe is true. If they are incorrect in

respect to their evaluation of the testimony and are thereby led to render erroneous judgments, the fault lies in the method pursued rather than in the agency employed.

Absolute accuracy of decision is not always attainable, especially where the evidence is conflicting on material points. In arriving at a decision under such circumstances frequently the court is not entirely satisfied that it is correct. After weighing and balancing the conflicting testimony the trial court must reach a decision which, in effect, means that it believes one set of witnesses rather than the other. This is one of the unpleasant and inescapable duties of the office which must be performed.

■ ■ In this case the trial court has accepted as true the testimony of the complainants rather than that of the defendants. Its finding upon the testimony even where taken by deposition, as was the case here, is at least presumptively correct, though not entitled to as great weight as would have been accorded it if the testimony had been taken *ore tenus.* The burden was upon the appellants here to demonstrate that in the adjudication of fact by the trial court it committed reversible error. This, according to our opinion, they have not done.

The decree is affirmed.

*Affirmed.*