# Richmond

## Pearl C. Clay v. W. P. Landreth and C. M. Tysinger.

January 12, 1948.

Record No. 3270.

Present, All the Justices.

The opinion states the case.

*Hart & Hart,* for the appellant.

*S. King Funkhouser* and *Martin P. Burks,* for the appellees.

GREGORY, J., delivered the opinion of the court.

Pearl C. Clay filed his bill in chancery against the defendants, Landreth and Tysinger, the purpose of which was to have the court decree the specific performance of a certain contract made between the parties for the sale and purchase of a certain lot. An answer was filed by the defendants, and the case was heard upon the bill, answer and an agreed statement of facts. The trial court denied the relief requested and delivered a written opinion which is made a part of the record.

The defense set forth in the answer is that the parties had agreed to sell and purchase the said lot for the purpose of erecting thereon a storage plant for ice cream and frozen fruits, at a time when this particular use was not prohibited by the zoning ordinances of the city of Roanoke for the reason that the lot was then zoned for business uses. It was averred that between the time the contract was made and the time for the delivery of the deed the city council rezoned this lot so that it could be used only for residence purposes; that at the time of making the contract it was contemplated and known by both the vendor and the vendee that it was to be used for the purpose of erecting a storage plant for ice cream and frozen fruits; that the rezoning of the lot has caused a very substantial depreciation

in its value; that it would be inequitable and produce results not within the intent or understanding of the parties when the contract was made if specific performance should be decreed; and that to enforce the contract under such circumstances would be harsh and oppressive to the defendants.

From the agreed statement of facts it is clear that there is no question of fraud, misrepresentation, unfair dealing, or inequitable conduct on the part of either the complainant or the defendants, and that the defendants agreed to buy and the complainant agreed to sell the lot with the mutual intent that it would be usable for the purpose of erecting a storage plant thereon, but before the transaction was closed the intent and purpose of the sale failed through no fault of either party.

The issue here is whether the contract for the sale of the lot should have been enforced specifically when the agreed purpose for which it was purchased and sold was defeated by the subsequent unanticipated enactment by the city council of a rezoning ordinance changing the lot from what is known as business property to residential property.

The appellant argues here that the doctrine of equitable conversion applies; that this court should consider done what ought to have been done; and that in equity the complainant or vendor should be considered the owner of the purchase money and the defendants or vendees the owners of the lot as of the date of the contract, namely, March 13, 1946. The resultant loss of the intended use of the property and the loss in value of the lot sustained by the rezoning would fall on the defendants if this theory were applied.

That the doctrine of equitable conversion exists in Virginia cannot be doubted. In the early case of *Dunsmore* v. *Lyle* (1891), 87 Va. 391, at p. 392, 12 S. E. 610, the doctrine was stated thus: "The principles upon which courts of equity decree specific performance of contracts for the sale of real estate are well understood and familiar to the profession, yet it will be convenient, in the view we have taken of this case, to briefly recur to first principles;

and we will remark that it is one of the principles of equity that it looks upon things agreed to be done as actually performed; and, consequently, as soon as a valid contract is made for the sale of an estate, equity considers the buyer as the owner of the land, and the seller as a trustee for him; and, on the other hand, it considers the seller as the owner of the money, and the buyer as a trustee for him."

See also, Digest of Va. & W. Va. Reports (Michie), Vol. 2, at p. 966.

The rule, however, is limited in its application to cases where the enforcement of the contract is in accord with the intention of the parties, free from fraud, misrepresentation and the like, and where it will not produce inequitable results. Principles similar to those which govern the enforcement of specific performance underlie the application of equitable conversion. In both cases the equitable doctrines and their limitations are well defined and stem from the same equitable source. Neither will specific performance of a contract be decreed, nor equitable conversion applied if, by doing so, hardship and injustice are forced upon one of the parties through a change in circumstances not contemplated by them when the contract was made. This equitable principle applies equally whether the case involves a will or a contract for the sale of land.

In *Tazewell Coal, etc., Co.* v. *Gillespie*, 113 Va. 134, 75 S. E. 757, the court, in quoting from *Dyer* v. *Duffy*, 39 W. Va. 148, 159, 19 S. E. 540, 24 L. R. A. 339, held: " 'Courts of equity will not exercise jurisdiction in specific performance where it would impose hardship on people not censurable in conduct and where the circumstances and conditions of things have been so changed as to work loss and hardship to them.' "

And again, at 113 Va., page 143, in the same case, it was written: "Where specific performance is asked as well as where reformation of an instrument is sought on the ground of mutual mistake, and where the element of hardship and injustice comes into the case through a change in circumstances not contemplated by the parties when the contract

was entered into, the relief will not be granted." (Citing a number of authorities.)

In the early case of *Craig* v. *Leslie*, 3 Wheat. (16 U. S.) 563, 4 L. Ed. 460, the Supreme Court defined the doctrine of equitable conversion thus: "The doctrine of conversion is based on the principle that equity regards things directed or agreed to be done as having been actually performed *where nothing has intervened which ought to prevent a performance.* Hence money directed to be employed in the purchase of land, and land directed to be sold and converted into money are to be considered as that species of property into which they are directed to be converted; and this in whatever manner the directon is given,—whether by will, contract, marriage settlement or otherwise." (Italics supplied.)

If something has intervened which ought to prevent it, the doctrine of equitable conversion will not be applied. It does not exist as a matter of right and is not applicable to all circumstances. It is a fiction invented by courts of equity to be applied only when necessity and justice require its exercise. When it arises from a contract, as distinguished from a will, the general rule is that the legal fiction is based upon the presumed intent of the parties. *National Bank* v. *Saia*, 154 Kan. 740, 121 P. (2d) 251, 138 A. L. R. 1290; *Eddington* v. *Turner* (Del.), 38 A. (2d) 738, 155 A. L. R. 562. In *Ingraham* v. *Chandler*, 179 Iowa 304, 161 N. W. 434, L. R. A. 1917D, 713, is found this clear statement of the rule: "The doctrine of equitable conversion is altogether a doctrine of equity and depends wholly upon the rules of equity. Its real purpose is to give effect to the manifest intent of a testator or vendor and to treat that as done which by will the testator has directed to be done or that which by previous contract with another both have mutually bound themselves to do."

And again at page 437 (161 N. W.) this is stated: "As already indicated the doctrine of equitable conversion is a doctrine of equity and not a rule of law. Its intent is to lengthen the arm of the court of equity to do justice in a

particular case by giving effect to the intention of a testator. Its application is always withheld if it should appear to foil the intent of the testator or to work injustice in the particular case."

When the agreed facts are considered it is apparent that, in the case at bar, the legal fiction of equitable conversion should not be applied because to do so would set at naught the intent and purpose of the parties with resultant hardship and injustice to the defendants. The sole intent of the vendor in the contract was to sell to the vendees and the vendees intended to purchase a lot usable for the erection of a storage plant. This intent has been defeated by the supervening act of the council of Roanoke in rezoning the property, which has effected such a substantial change of conditions and loss in value that it would be inequitable to apply the doctrine of equitable conversion.

The appellant places great reliance upon the early case of *Hale* v. *Wilkinson* (1871), 21 Gratt. (62 Va.) 75. There Hale sold to Wilkinson a house and lot and 14 acres of land in 1863 for $10,000, payable in Confederate money in installments payable in three and six months from date. All of the installments were paid prior to January, 1865, and Hale received them, executing his receipts therefor. At that time Hale not only had the entire purchase money but he also had the property. The contract was entirely executed on the part of Wilkinson, and all that remained to be done was the execution of the deed by Hale, conveying the property to Wilkinson. The sole defense to the suit for specific performance was that the price paid was inadequate, the contention being that the defeat of the Confederacy rendered the value of this currency null and void. However, the consideration had been paid and received prior to the end of the war. The court said that the question of the inadequacy of the consideration "stands solitary and alone as the ground on which relief is claimed from the obligation to perform the contract", thus limiting the issue to that sole question. The court then held that inadequacy of consideration was not sufficient to defeat specific per-

formance unless it was so great as to shock the moral sense of the chancellor and thereby be proof of fraud. It then held that was not the case here and that the inadequacy here was not a defense to the enforcement of the contract. On this phase of the case the court concluded, "We must therefore consider this case as we would consider it if the payments had been duly made at maturity. And so considering it, I cannot conceive of any ground on which a suit by the vendee for specific execution of the contract after such payment and during the war could have been resisted." After having decided that the vendor should be required to execute the deed the court went further making the statement that "there are cases in which a change of circumstances may render it improper for the court to enforce the execution of a contract. *But those are cases in which the plaintiff is in default.*" (Italics supplied.) The italicized statement was not necessary to the decision of the case, and so far as we are advised it has not been given sanction in any subsequent Virginia case.

In the *Hale Case* there was an entire absence of any evidence tending to show that the plaintiff (vendee) was in default. He had paid the purchase price in full and had done all he had agreed to do. He was clearly entitled to a deed. There was no material change of circumstances occurring after the contract was entered into affecting the rights of the parties.

If it is inequitable to enforce the contract specifically by reason of subsequent changed conditions, and if to do so will produce hardship and injustice on the defendant which was not contemplated by the parties at the time the contract was made, the court simply will not enforce it even though the plaintiff is not in default. This appears to be the rule in Virginia and in most jurisdictions. See annotation, 65 A. L. R. 7.

In *Grizzle* v. *Sutherland*, 88 Va. 584, at page 588, 14 S. E. 332, this court held: "Equity will not proceed to decree specific performance where the contract is founded in fraud, imposition, mistake, undue advantage, or gross misapprehen-

sion, or where, upon a change of circumstances or otherwise, it would be unconscientious to enforce it.

"The specific execution of a contract in equity is a matter, not of absolute right in the party, but of sound discretion in the court. Hence it requires a much less strength of case on the part of the defendant to resist a bill to perform a contract than it does on the part of a plaintiff to maintain a bill to enforce a specific performance. An agreement, to be entitled to be carried into specific performance, ought to be certain, fair, and just in all its parts. Courts of equity will not decree specific performance in cases of fraud or mistake, or of hard and unconscionable bargains, or where the decree would produce injustice, or generally in any cases where such a decree would be inequitable under all the circumstances. See also, 3 Parsons on Contracts, p. 301."

The foregoing quotation is the general rule in Virginia today. And in *Griscom* v. *Childress*, 183 Va. 42, at p. 47, 31 S. E. (2d) 309, Justice Hudgins, now Chief Justice, speaking for the court, reiterated: "No principle of equity is more generally approved than that the specific performance of a contract is not a matter of absolute right but rests in a sound judicial discretion."

The same principle is set forth in the case of *Christianson* v. *Brosius*, 184 Va. 958, at p. 963, 37 S. E. (2d) 50. There we said: "There are general rules and principles which govern the application of specific performance but relief is granted or refused according to the circumstances of each particular case. It is within the sound discretion of the court."

And again the principle was recognized in *Mitchell* v. *Wayave*, 185 Va. 679, at p. 689, 40 S. E. (2d) 284. See also, *Walker* v. *Henderson*, 151 Va. 913, 145 S. E. 311, and *Ford* v. *Euker*, 86 Va. 75, at pp. 77-79, 9 S. E. 500, and annotation in 65 A. L. R. 7.

Of course, if a contract is certain and unambiguous, based upon a valuable consideration, free from fraud or mistake, not unconscionable, and its performance will not result in

oppression upon the defendant, as a matter of course it will be specifically performed in equity; but on the other hand, if the circumstances and conditions have been so changed since its execution as to impose a loss and injustice upon an innocent defendant, a court of equity ordinarily will not enforce it regardless of the plaintiff's freedom from fault.

The question presented in the case at bar is a novel one in this jurisdiction. It does not appear that a similar case in point of facts has been decided by our court although the general equitable principles involved have been frequently adjudicated.

In *Anderson* v. *Steinway & Sons,* 178 App. Div. 507, 165 N. Y. S. 608, affirmed in 221 N. Y. 639, 117 N. E. 575, specific performance was refused in a case almost identical with the one at bar because it would have been inequitable to have required performance. The court ruled that neither party to the contract when it was made could have reasonably anticipated that before closing the transaction the lawmaking power would step in and impose such restrictions upon the use of the property as would render it useless to the defendant for the only purpose for which he sought to acquire it. Like considerations obtain in the case at bar. From our research the logical and sound principle announced in the *Anderson Case* is still the law of New York.

In Williston on Contracts, Rev. Ed., Vol. 4, at p. 2587, the author states, in speaking of zoning ordinances, that "if a restriction precludes use of the land for the purpose for which, as the vendor knows, it is bought, specific performance will not be granted." The case of *Anderson* v. *Steinway & Sons, supra,* is cited as support for that proposition.

In addition to the case of *Anderson* v. *Steinway & Sons, supra,* the only other case which we have found that is similar to the one at bar on the facts is *Kend* v. *Crestwood Realty Co.,* 210 Wis. 239, 246 N. W. 311. There an action was brought by the plaintiffs for the *cancellation* and *rescission* of a land contract entered into between the plaintiffs and the realty company. The realty company had repre-

sented to the plaintiffs that the land was restricted for business purposes, and, relying upon this representation, the plaintiffs were induced to enter into the contract. A subsequent zoning law was enacted forbidding the use of the premises for business. This change in the use of the premises was the basis of the plaintiff's action for the cancellation of the contract. The court held that there was no basis for a cancellation and rescission and that there was no breach of the contract on the part of the defendants which would warrant the relief sought by the plaintiffs. The Wisconsin court, however, recognized the principle applied in *Anderson* v. *Steinway & Sons, supra,* and in speaking of that case, said, that the New York court "recognizing that the title was marketable and unencumbered in a legal sense, held that under all of the circumstances the relief of specific performance could not conscionably be given. This case amounts merely to an application of the ordinary rule that when circumstances subsequent to a contract have so changed the situation as to render the equitable relief of specific performance unfair or unjust the chancellor will follow his conscience and deny such relief."

And the Wisconsin court concluded: "Nor does the fact that a court of equity might decline its assistance in the direction of specific performance compel the conclusion that the same court should permit or assist plaintiffs to rescind."

What has been quoted is sufficient to show that a court of equity may refuse specific performance when a subsequent change of circumstances not contemplated by the parties, occurring after the contract has been made, would render it inequitable. There is a difference between rescission of a contract and the specific performance of it. Rescission is the counterpart of a suit for specific performance. *Hagan* v. *Taylor,* 110 Va. 9, 65 S. E. 487. If the former is granted, the contract is terminated for all purposes, while if the latter is refused, the contract is not terminated. The court of equity simply refuses to enforce it but for other purposes the contract is still in force. This principle was recognized in the decree in the case at bar

when it provided that it was "without prejudice to his (complainant's) right to bring an action at law."

If the Wisconsin case had been one to enforce specifically the contract instead of one for rescission, no doubt the court would have followed the principle in the case of *Anderson v. Steinway & Sons, supra,* and denied the relief.

Finally, the appellant contends that the defendants were guilty of an inequity in that they did not actively oppose the rezoning of the lot in question. Counsel for the defendants was in the council chamber when the question of rezoning was brought up but he took no part in the discussion. He expressed no opposition to the rezoning. Under these circumstances it is difficult to see how any bad faith could be imputed to the defendants from counsel's conduct. The agreed facts contain nothing that would show any inequitable conduct on the part of either the complainant or the defendants.

The intervening of governmental authority, entirely unanticipated, has vitiated the purpose which was the foundation for the contract. It rendered the property useless to the defendants in that they could not use it for the intended purpose. The complainant cannot convey to the defendants what they agreed to purchase and he agreed to convey.

We think the decree should be affirmed.

*Affirmed.*